J. Brett Busby, Justice
Appellant Jesus Rosales appeals his conviction for two counts of super-aggravated sexual assault of a child. In his first two issues, appellant contends the trial court abused its discretion in denying his motion for mistrial and his request for an Allen charge after the jury twice indicated it was deadlocked. In his third issue, appellant argues the trial court erred in designating *800 the child-complainant's mother and a forensic interviewer as outcry witnesses.
We conclude that the trial court acted within its discretion in holding the jury for deliberations for seven and a half hours until it reached its verdict, and in denying the request for an Allen charge. We further conclude that the trial court properly designated the complainant's mother and the forensic interviewer as outcry witnesses because each was the first person to whom the child complained about one of the charged offenses in a discernible manner. Even if the designations were error, however, those errors are harmless because the testimony was cumulative of other evidence admitted without objection. We affirm the trial court's judgment.
BACKGROUND
When the child complainant in this case, Chloe, was about seven months old, she and her mother (Mother) began living with appellant.[1] Over the next several years, appellant and Mother moved multiple times and had three children together. Appellant and Mother ended their relationship when Mother became pregnant by another man and moved in with him. Mother and the other man lived together in Houston with the children for approximately eight months before moving with all of the children to Louisiana.
The allegations of abuse
Before she moved to Louisiana, Mother had a conversation with her sister, Mary, in which Mary accused Mother of not taking care of Chloe properly. The trial court heard about this conversation outside the presence of the jury. According to Mary, Chloe told her that appellant had touched Chloe the wrong way and told her to take her pants off. Mother asked Chloe about the comments but at that time Chloe denied being abused.
The jury heard testimony that shortly after moving to Louisiana, Chloe started crying upon being disciplined for fighting with her sister. When Mother asked what was wrong, Chloe told Mother that "Chooch" (a nickname for appellant)[2] had touched her the wrong way and put his private part or "middle part" in her mouth. Mother called the police in Houston and reported what Chloe had told her. Houston police opened an investigation.
Mother and Chloe travelled from Louisiana to the Children's Assessment Center in Houston. Chloe first met with forensic investigator Claudia Gonzalez. During the forensic interview, Chloe told Gonzalez that, while she was between the ages of seven and nine, appellant abused her by putting his "middle part"[3] in her "butt."[4] Chloe described many details regarding the abuse and stated that it happened more than one time. Chloe told Gonzalez that appellant threatened he would kill Mother or slap or hit Chloe if Chloe told anyone.
Dr. Marcella Donaruma also examined Chloe at the Center. Dr. Donaruma determined that Chloe's physical condition was *801 normal, which Dr. Donaruma explained was to be expected given the length of time between the exam and the abuse. Dr. Donaruma noted in her report that Chloe stated that "he put his middle part right here in my butt" and in her mouth. Dr. Donaruma understood "middle part" to mean penis.
The charges and trial proceedings
By two separate indictments, the State charged appellant with super-aggravated sexual assault of a child aged six to fourteen years of age.[5] Appellant was indicted for intentionally and knowingly causing the anus of the complainant to contact appellant's sexual organ in cause number 1458488, and intentionally and knowingly causing the mouth of the complainant to contact appellant's sexual organ in cause number 1458489. The cases were consolidated for trial. Appellant pleaded not guilty and a jury was empaneled.
The guilt-innocence portion of the trial lasted approximately two-and-a-half days, with the jury hearing evidence from seven witnesses and twenty-two exhibits. The trial court designated Mother and forensic interviewer Gonzalez as the outcry witnesses after holding hearings outside the presence of the jury. The trial court designated Mother as the proper outcry witness with regard to appellant putting his "middle part" or penis in Chloe's mouth.[6] The court designated Gonzalez as the outcry witness with regard to appellant putting his penis in Chloe's anus. Mother and Gonzalez testified before the jury as to the statements made by Chloe to them regarding the abuse. Dr. Donaruma also testified regarding the medical examination and the statements made to her by Chloe regarding the abuse.
Chloe, who had just turned twelve years old, testified at the trial and described in detail the instances of abuse by appellant. In her testimony at trial, Chloe identified incidents of appellant putting his penis[7] in her bottom, stating that it hurt and made her feel sad. She also recounted times when appellant put his penis in her mouth.
The jury also heard from appellant's sister, who testified regarding the lack of privacy in one of the homes where the family lived during the relevant period. The sister also testified that she had a conversation with Mother, in which Mother admitted that she lied about the accusation of appellant touching Chloe and demanded money from a settlement appellant had received or Mother would press charges. Mother denied lying about the charges or threatening appellant.
The jury began its deliberations at approximately noon on the third day of trial. At 2:15 p.m., the jury sent the first of four notes. The note asked for transcripts of testimony from two of the witnesses and asked two questions regarding Chloe. The trial court responded by bringing the jury back to the courtroom and explaining that there could not be a general read-back of testimony, but that the jury could have certain portions read back if the jurors disagreed as to the statement of a witness. The jury retired to their deliberations, and at 3:10 p.m. sent their second note. The *802 second note read: "After instructions from the Judge, the jury has no questions at this time. However, the jury is unable to reach a unanimous verdict." The trial court responded with "please continue your deliberations." Appellant's counsel moved for a mistrial on grounds that the jury was deadlocked. The trial court denied the motion.
At 4:34 p.m., the jury sent out its third note. The note read: "The jury remains deadlocked, nine to three." At that point, appellant's counsel again moved for a mistrial and the trial court again denied the motion. Appellant's counsel then asked for an Allen charge[8] specifically reminding the jury not to do harm to or vitiate their conscience, since the jury had indicated it was deadlocked. The trial court noted that the jury had been deliberating for about four hours and forty minutes at that point and the court did not think an Allen charge was yet warranted. The trial court asked the jury to continue their deliberations the next morning as it was almost 5:00 p.m., and the court did "not want to have the late hour affect your deliberations." The jury then adjourned for the evening.
The jury returned the next morning to resume deliberations. At 12:05 p.m., the jury sent out its fourth note. The fourth note informed the court that the foreman had mistakenly signed the wrong portion of the jury charge and asked whether the jury needed a new form. The trial court sent a new verdict form to the jury. At 12:25 p.m., the jury returned its verdict, finding appellant guilty of both charges of super-aggravated sexual assault of a child. Appellant asked to have the jury polled, and each juror indicated that this was his or her verdict. The jury assessed punishment at thirty years in prison for each count, with sentences to run concurrently.
ANALYSIS
I. The trial court acted within its discretion in denying a mistrial.
In his first issue, appellant contends the trial court reversibly erred by failing to grant appellant's motions for mistrial after being informed of a jury deadlock. We review a trial court's ruling on a motion for mistrial for an abuse of discretion. Ladd v. State , 3 S.W.3d 547, 567 (Tex. Crim. App. 1999) ; Katzenberger v. State , 439 S.W.3d 566, 570 (Tex. App.-Houston [14th Dist.] 2014, pet. ref'd). Under this standard, we will not disturb the trial court's ruling if the ruling was within the zone of reasonable disagreement. Montgomery v. State , 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) ; Katzenberger , 439 S.W.3d at 570.
Under Article 36.31 of the Code of Criminal Procedure, a trial court has discretion to discharge a jury "where it has been kept together for such time as to render it altogether improbable that it can agree." Tex. Code Crim. Proc. Ann. art. 36.31 (West 2006) ; Katzenberger , 439 S.W.3d at 570. There is no limit on the length of time a jury may deliberate. Melancon v. State , 66 S.W.3d 375, 383 (Tex. App.-Houston [14th Dist.] 2001, pet. ref'd.) (op. on reh'g) (en banc). The length of time the jury may be held rests in the discretion of the trial court, taking into consideration the nature of the case and the evidence to be considered. See Montoya v. State , 810 S.W.2d 160, 166 (Tex. Crim. App. 1989) (en banc); Katzenberger , 439 S.W.3d at 570.
In this case, the guilt-innocence phase of the trial lasted approximately two-and-a-half days and involved charges *803 of super-aggravated sexual assault of a child. The jury heard from multiple witnesses and received many exhibits. The jury had deliberated just over three hours when it first sent notice that it was unable to reach a unanimous verdict. Appellant moved for a mistrial, which the trial court denied, and the trial court responded to the jury with an instruction to "please continue your deliberations." Less than an hour-and-a-half later, the jury again sent a note that it remained "deadlocked, 9 to 3." At that point, the jury had been deliberating for approximately four hours and forty minutes. Appellant again moved for a mistrial and the trial court again denied the motion. We cannot say the trial court abused its discretion in doing so.
The trial court is not required to declare a mistrial "at the first sign of juror impasse." Howard v. State , 941 S.W.2d 102, 121 (Tex. Crim. App. 1996), overruled on other grounds by Easley v. State , 424 S.W.3d 535, 538 n.23 (Tex. Crim. App. 2014). Rather, the court may instruct a jury to continue its deliberations when the jury indicates it is unable to reach a verdict. See Montoya , 810 S.W.2d at 166 ; Ford v. State , 14 S.W.3d 382, 395 (Tex. App.-Houston [14th Dist.] 2000, no pet.) ("A trial court's instruction to a jury to continue deliberating will not be construed as coercive unless it pressures the jurors into reaching a verdict or contains additional instructions as to the law."); Burnett v. State , 754 S.W.2d 437, 447-48 (Tex. App.-San Antonio 1988, pet. ref'd).
This Court and others have, on several occasions, found no abuse of discretion in denying a motion for mistrial where the jury had deliberated for a period similar to or longer than the four and a half hours at issue here. See , e.g. , Katzenberger , 439 S.W.3d at 570-71 (no abuse of discretion to deny motion for mistrial where jury indicated deadlock after deliberating ten and a half hours); Draper v. State , 335 S.W.3d 412, 416 (Tex. App.-Houston [14th Dist.] 2011, pet. ref'd) (no abuse of discretion in denying mistrial and giving Allen charge after seven hours of deliberation); Melancon , 66 S.W.3d at 384 (no abuse of discretion in ordering jury to continue deliberating when it reported deadlock after four and a half hours of deliberations); Bledsoe v. State , 21 S.W.3d 615, 623-24 (Tex. App.-Tyler 2000, no pet.) (no abuse of discretion in denying mistrial after four hours of deliberations); Burnett , 754 S.W.2d at 447-48 (no abuse of discretion in denying mistrial where jury twice sent notes regarding deadlock and deliberated more than twenty-one and a half hours before reaching verdict). On this record, we likewise conclude that the trial court did not abuse its discretion in denying appellant's motion for mistrial. Given the length of the evidence phase of the trial and the amount and type of evidence presented to the jury, we cannot say it was outside the zone of reasonable disagreement for the trial court to deny a mistrial after the jury had been deliberating for the relatively short time of four hours and forty minutes.
Appellant argues that lengthy deliberations were not justified because the jury had only to weigh the credibility of Chloe and the issues were not complex. We disagree. The jury had to weigh evidence involving a difficult subject matter, a child witness, and sometimes conflicting testimony from several witnesses. When a jury must weigh difficult or conflicting testimony in making its decision, as it did in this case, longer deliberations may be warranted. See Katzenberger , 439 S.W.3d at 571 ("The fact a jury has to weigh difficult testimony and determine witness credibility often implicates the need for longer deliberations and no abuse of discretion in denying a motion for mistrial.").
*804 We hold the trial court did not abuse its discretion in denying appellant's motion for mistrial. Appellant's first issue is overruled.
II. The trial court acted within its discretion in refusing to give an Allen charge.
A. Standard of review and applicable law
In his second issue, appellant argues that once the jury made its 9-to-3 division known, the trial court's failure to give an Allen charge with language reminding the jury that they should not vitiate or do violence to their conscience was coercive. We review a trial court's decision whether to give a supplemental jury instruction for an abuse of discretion. See Martinez v. State , 131 S.W.3d 22, 40 (Tex. App.-San Antonio 2003, no pet.) ; see also Baptiste v. State , Nos. 01-01-00488-CR, 01-01-00489-CR, 2002 WL 827188, at *3 (Tex. App.-Houston [1st Dist.] May 2, 2002, pet. ref'd) (not designated for publication). An Allen charge is designed to foster debate and circumvent a mistrial when a jury is deadlocked. Draper , 335 S.W.3d at 417. Approved Allen charges contain language reminding the jury that if they are not able to reach a verdict, the case will be tried again before another jury at some time in the future with the same evidence and same questions presented. Id. Such charges also typically remind the jury to continue deliberations in an effort to "arrive at a verdict that is acceptable to all members of the jury if you can do so without doing violence to your conscience." Id.
In Howard v. State , the Court of Criminal Appeals stated that "[t]he primary inquiry to determine the propriety of an Allen or 'dynamite' charge is its coercive effect on juror deliberation, 'in its context and under all circumstances.' " 941 S.W.2d at 123 (quoting Lowenfield v. Phelps , 484 U.S. 231, 237, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988) ). Although we do not address a situation in which the trial court gave an Allen charge, we believe it is likewise appropriate to consider whether the failure to give an Allen charge-in light of all circumstances including the instructions actually given by the trial court-had a coercive effect on juror deliberation. Under the circumstances of this case, we conclude that it did not.
B. The trial court's instructions to continue deliberating were not coercive.
At the time the trial court denied appellant's request for an Allen charge, the jury had been deliberating for approximately four hours and forty minutes. The trial court stated it did not think it was time for an Allen instruction. The court instead instructed the jurors to continue their deliberations the next morning. The trial court cautioned the jurors that it did not want the late hour to affect their deliberations and released the jury for the evening.
A trial court's instruction to a jury to continue deliberating will not be construed as coercive unless it pressures the jurors into reaching a verdict. Bell v. State , 938 S.W.2d 35, 56 (Tex. Crim. App. 1996) (en banc); Montoya , 810 S.W.2d at 166-67 ; Ford , 14 S.W.3d at 395. The trial court here did not single out or address any specific juror or jurors, nor pressure the jurors into reaching a verdict. An instruction that speaks to the jurors as a whole, without singling out any specific juror or jurors, is not coercive on its face. See Howard , 941 S.W.2d at 123 ("Thus, a supplemental charge which suggests that all jurors reevaluate their opinions in the face of disparate viewpoints cannot be said to be coercive on its face"); see also Bell , 938 S.W.2d at 56-57 (instruction to continue *805 deliberating did not indicate that disagreeing juror should defer to opinion of majority or otherwise pressure jurors into reaching a verdict and was not coercive); Ford , 14 S.W.3d at 395 (instruction to continue deliberating not coercive unless it pressures jurors into reaching a verdict or contains additional instructions as to the law).
Moreover, there is nothing in the record to establish any jurors were in fact coerced by the instructions given by the trial court or by the lack of an Allen charge. See Freeman v. State , 115 S.W.3d 183, 187 (Tex. App.-Texarkana 2003, pet. ref'd) (if charge given not coercive on its face, appellant has burden to show that coercion actually occurred). After the trial court instructed the jury to continue deliberating the following morning, the jury continued to do so for another three hours before reaching a verdict. The jurors were polled after the verdict was read and each juror indicated that it represented his or her verdict. There is nothing to suggest that any coercion of the jurors actually occurred. See Freeman , 115 S.W.3d at 187 (in absence of evidence of coercion, trial court did not abuse its discretion in denying motion for mistrial); Henderson v. State , No. 14-99-00732-CR, 2001 WL 333196, at *3 (Tex. App.-Houston [14th Dist.] Apr. 5, 2001, no pet.) (not designated for publication) (jurors continued deliberating for hour after instruction to "continue deliberations and try to reach a verdict," thus undermining any contention that dissenting juror was coerced).
Appellant argues that the trial court's refusal to give an Allen charge "directing the minority to consider its verdict without betraying its conscience" was coercive because it occurred after the trial court learned of the jury's numerical division. Appellant urges this Court to adopt as Texas policy the federal rule set forth in Brasfield v. United States , prohibiting trial judges from inquiring into the numerical division of a jury. 272 U.S. 448, 450, 47 S.Ct. 135, 71 L.Ed. 345 (1926). We decline to do so for two reasons.
First, the Court of Criminal Appeals in Howard addressed the rule set out in Brasfield and held it did not apply to state court proceedings. See Howard , 941 S.W.2d at 124. The Court explained that the rule in Brasfield prohibiting a trial court from inquiring into the nature of a jury division was a prophylactic rule based on the U.S. Supreme Court's exercise of supervisory powers, and not required by any constitutional provision. Id. As such, it "simply has no application to this state proceeding or this Court's holding." Id. The mere fact that the trial court knows of a jury's numerical division does not prevent it from giving supplemental instructions. See West v. State , 121 S.W.3d 95, 109 (Tex. App.-Fort Worth 2003, pet. ref'd) (trial court did not err in giving Allen charge even though trial court knew of 11-1 division).
Second, though it can in some instances be error for a trial court to inquire into a jury's numerical division and then give coercive instructions,[9] the trial court here did not so inquire. The trial court learned of the numerical division not in response to any inquiry of its own, but from the jury's unsolicited note. See Howard , 941 S.W.2d at 124 ("The trial court's information as to numeric division was an unsolicited and extraneous reference in a note from the jury. In this context we find the Allen charge to be noncoercive."). The *806 trial court then instructed the jurors to resume deliberating the next morning, so that the late hour would not affect their deliberations. In this context, the trial court's knowledge of the numerical division did not make it error for the trial court to deny the request for an Allen charge.
Appellant has cited no authority, nor did our research locate any, in which a court has held it was error to deny a request for an Allen charge. We note that at least one court of appeals has held that a trial court was not required to give an Allen instruction before it could declare a mistrial due to a genuinely deadlocked jury. See Traylor v. State , 534 S.W.3d 667, 682-83 (Tex. App.-Corpus Christi 2017, pet. granted) (citing Renico v. Lett , 559 U.S. 766, 775, 130 S.Ct. 1855, 176 L.Ed.2d 678 (2010) ). Mindful of the trial court's discretion regarding whether to give supplemental jury instructions, we conclude the trial court did not abuse that discretion by failing to give the jury an Allen charge in this case. We overrule appellant's second issue.
III. The outcry witness designations are not reversible error.
In his third issue, appellant contends the trial court erred by designating Mother and the forensic interviewer Gonzalez as outcry witnesses, rather than Chloe's aunt Mary. We review the trial court's designation of an outcry witness for an abuse of discretion. See Garcia v. State , 792 S.W.2d 88, 92 (Tex. Crim. App. 1990) ; Polk v. State , 367 S.W.3d 449, 452 (Tex. App.-Houston [14th Dist.] 2012, pet. ref'd). The designation will be upheld when supported by the evidence. Polk , 367 S.W.3d at 452. A trial court abuses its discretion only if its ruling is outside the zone of reasonable disagreement, and we will not disturb the trial court's ruling unless a clear abuse of discretion is shown. Id.
Under the Texas Rules of Evidence, hearsay is not admissible unless it falls within an exception to the rule. Tex. R. Evid. 802 ; Hayden v. State , 928 S.W.2d 229, 231 (Tex. App.-Houston [14th Dist.] 1996, pet. ref'd). Article 38.072 of the Code of Criminal Procedure provides a statutory exception to the rule against hearsay for prosecutions of certain sexual crimes. See Tex. Code Crim. Proc. Ann. art. 38.072 § 2(b) (West Supp. 2017); Hayden , 928 S.W.2d at 231. The burden of proof is on the State, as the proponent of the evidence, to establish the elements of Article 38.072 in order for the testimony to be admissible. Hayden , 928 S.W.2d at 231.
The statute requires the trial court to hold a hearing outside the presence of the jury to determine whether the statement is reliable based on the time, content, and circumstances of the statement. Tex. Code Crim. Proc. Ann. art. 38.072, § 2(b)(2) ; Manderscheid v. State , No. 14-12-00579, 2013 WL 6405470, at *3 (Tex. App.-Houston [14th Dist.] Dec. 5, 2013, no pet.) (not designated for publication). To be admissible, the proponent of the evidence must establish that the statements (1) were made by the child against whom the offense was allegedly committed; and (2) were made to the first person, 18 years of age or older, other than the defendant, to whom the child made a statement about the offense. Tex. Code Crim. Proc. Ann. art. 38.072, § 2(a)(1)(A), (2), (3).
The Court of Criminal Appeals has interpreted this statute to mean "that the outcry witness must be the first person, 18 years old or older, to whom the child makes a statement that in some discernible manner describes the alleged offense." Garcia , 792 S.W.2d at 91. The statement of the child must be more than words giving a "general allusion that something in the area of child abuse was going on." Id. In addition, outcry witness designations *807 are event-specific, not person-specific. Polk , 367 S.W.3d at 453. More than one outcry witness may testify if each witness testifies regarding different events. See Lopez v. State , 343 S.W.3d 137, 140 (Tex. Crim. App. 2011) ; Polk , 367 S.W.3d at 453.
The trial court held several outcry witness hearings and concluded that Mother was the proper outcry witness regarding Chloe's statement that appellant put his penis in her mouth, and that Gonzalez was the proper outcry witness regarding Chloe's statement that appellant put his penis in her anus. As explained above, appellant was indicted twice: once for each of these acts.
Appellant argues that the trial court improperly designated Mother and Gonzalez because Chloe's aunt Mary was instead the first person to whom Chloe made statements regarding abuse. We disagree that Mary is the proper outcry witness because the record reflects that only general allusions of abuse were made to Mary.
Both Mother and Chloe testified regarding statements Chloe made to Mary. Mother recounted a conversation with Mary in which Mary told Mother she was not taking good care of Chloe. The reason Mary felt that way, she explained to Mother, is that Chloe had told Mary that appellant "touched her the wrong way." Mother acknowledged that she was not present for the conversation between Mary and Chloe and did not know whether Chloe said anything else.[10] Later in the trial, Chloe testified that Mary asked her whether anything happened with appellant, and Chloe denied telling Mary about the abuse. Chloe stated she was afraid to say anything at that time because the family was still living in Houston and she was scared. In her conversation with forensic interviewer Gonzalez, Chloe indicated she told her mother of the abuse but did not indicate she told anyone else.
On this record, we hold the trial court was within the zone of reasonable disagreement in concluding Mary was not the proper outcry witness. The statement to Mary that appellant "touched her the wrong way" is no more than a general allusion that abuse had occurred. See Garcia , 792 S.W.2d at 91 (statements to teacher that abuse happened contained no details of offense and were general allusion that abuse occurred); see also Bargas v. State , 252 S.W.3d 876, 894 (Tex. App.-Houston [14th Dist.] 2008, no pet.) (statements to grandmother that child had been sexually abused did not contain details of offense and thus were general allusions that abuse had occurred).
In Hayden v. State , this Court addressed a similar issue regarding statements made to a child-complainant's school counselor before more detailed statements were given to an interviewer. 928 S.W.2d at 231. The record showed that the complainant in that case had made statements to the counselor regarding sexual abuse, but the record did not contain the full extent of the conversation. Id. We held that the counselor would not be the appropriate outcry witness because "there is no evidence that the complainant described to her the details of the alleged abuse." Id. ; see also Garcia , 792 S.W.2d at 91-92 (record was devoid of details as to what complainant told teacher about abuse, thus teacher was not proper outcry witness). Likewise, because the record does not show that Chloe made detailed statements regarding the charged offenses to Mary, the trial court could reasonably conclude that Mary was not the proper outcry *808 witness.[11]
Appellant also argues that sufficient record evidence supports designating Mary as the outcry witness because "inappropriate touching would encompass oral sex and anal sex."[12] We disagree. Appellant was indicted for the specific offenses of unlawful contact between the appellant's sexual organ and Chloe's mouth and anus, not for inappropriate touching. See Tex. Penal Code § 22.021(a)(1)(B)(i), (ii). The outcry witness designation is event-specific, not person-specific. See Polk , 367 S.W.3d at 453 (trial court properly designated multiple outcry witnesses for separate charged offenses).
Appellant argues in the alternative that if Mary is not the proper outcry witness, then Mother also would not qualify as an outcry witness because Chloe did not provide sufficient detail to Mother. We again disagree. Chloe described in sufficient detail to Mother the fact that appellant put his "private part" or "middle part" in her mouth. This provides a description of one of the charged offenses in a discernible manner, sufficient to satisfy article 38.072. See Bargas , 252 S.W.3d at 895 (complainant's statements to interviewer contained sufficient information about the nature of the acts and the perpetrator to meet the requirements of article 38.072 ); Nino v. State , 223 S.W.3d 749, 753 (Tex. App.-Houston [14th Dist.] 2007, no pet.) (child described offense in discernible manner by saying defendant "made me suck it" and pointing to his penis). Though the statement to Mother was not lengthy or overly-detailed, it contained sufficient information about the nature of the act and the perpetrator. See Nino , 223 S.W.3d at 753. We cannot say the trial court abused its discretion in finding Mother qualified as a proper outcry witness under the statute.
Even if the admission of Mother's and Gonzalez's testimony were error, we conclude it was harmless. The erroneous admission of hearsay testimony under article 38.072 is non-constitutional error. See Nino , 223 S.W.3d at 754. Such an error is harmless if we are reasonably assured that the error did not influence the verdict or had but a slight effect. Id. Where the same or similar evidence is admitted without objection at another point in the trial, the error is harmless. Id. (citing Mayes v. State , 816 S.W.2d 79, 88 (Tex. Crim. App. 1991) ).
In this case, the same or similar evidence was admitted without objection *809 through the testimony of both Dr. Donaruma and Chloe. Dr. Donaruma testified, without objection, that Chloe told her appellant put his middle part in her "butt" multiple times and it "hurted bad." Dr. Donaruma also testified that Chloe told her appellant touched her mouth with his middle part. In addition, Chloe herself provided detailed descriptions to the jury regarding the sexual abuse by appellant. Thus, we are reasonably assured that any error in the admission of the outcry testimony did not influence the jury's verdict, or had but a slight effect and was harmless. Nino , 223 S.W.3d at 754 ; see also Chapman v. State , 150 S.W.3d 809, 814-15 (Tex. App.-Houston [14th Dist.] 2004, pet. ref'd) (no harm where complainant testified in detail regarding offense and pediatrician testified to statements made by complainant regarding sexual abuse in patient history section of report); West , 121 S.W.3d at 105 ("Here, Dodson's hearsay testimony was not harmful in light of D.M.'s detailed, factually specific testimony concerning the assault.").
Appellant argues the testimony was harmful because it bolstered the testimony of Chloe, a child. We disagree. The jury heard directly from Chloe and was in the best position to judge Chloe's credibility regardless of the outcry testimony. Moreover, Dr. Donaruma's unchallenged testimony also bolstered the child's statements. Thus, we conclude that the outcry testimony, even if erroneously admitted, was harmless. See Chapman , 150 S.W.3d at 815. We overrule appellant's third issue.
CONCLUSION
Having overruled appellant's three issues on appeal, we affirm the trial court's judgment.

To protect the privacy of the parties involved in this case, we identify them by pseudonyms or their relation to the child complainant.

Appellant was known by the nicknames "Chooch" or "Choochi."

The complainant stated at the interview that the "middle part" is where pee comes out.

At the interview, the complainant referred to Jose, "Choochi," and Jesus, but stated that only one person assaulted her. The complainant knew it was appellant that did something to her, but was confused with the various names that he went by.

See Tex. Penal Code Ann. § 22.021(a)(2)(A)(ii) (West Supp. 2017).

The State conceded that Mother would not have been the first person that the complainant reported "inappropriate touching" by the appellant, as that would have been the aunt, Mary.

Chloe did not use the term penis when testifying, but called it his "thing" or "middle part," which she said is what he used to go to the bathroom.

See Allen v. United States , 164 U.S. 492, 501-02, 17 S.Ct. 154, 41 L.Ed. 528 (1896) ; Draper v. State , 335 S.W.3d 412, 416 (Tex. App.-Houston [14th Dist.] 2011, pet. ref'd).

See, e.g. , Barnett v. State , 161 S.W.3d 128, 134 (Tex. App.-Fort Worth 2005), aff'd , 189 S.W.3d 272 (Tex. Crim. App. 2006).

Mary refused to give a statement to the police and was not available at trial.

At oral argument, counsel for appellant suggested it would be inappropriate to put any burden upon appellant, who counsel alleged was indigent, to establish what was said to an out-of-state witness. We disagree. The State met its burden of establishing that the first person to whom Chloe described the charged offense in a discernible manner was Mother. Appellant had the opportunity to, and did, question both Mother and Chloe regarding what Chloe said to Mary. Neither Mother's recounting of the conversation between Chloe and Mary nor Chloe's testimony regarding what she said to Mary supported Mary as the proper outcry witness regarding contact with the mouth or anus of complainant. The trial court properly designated Mother as the outcry witness based on the record before it. See Garcia , 792 S.W.2d at 91-92 (trial court properly designated outcry witness where State met its burden regarding that witness and defense failed to offer any clarification in the record as to other purported outcry witness); see also Buentello v. State , 512 S.W.3d 508, 517 (Tex. App.-Houston [1st Dist.] 2016, pet. ref'd) ("The burden was not on the State to prove a lack of sufficient disclosure in these earlier conversations; instead, it was Buentello's burden to establish that one of the parents was the proper outcry witness instead of the later-in-time forensic interviewer.").

The State conceded below that Mary would be the proper outcry witness for "inappropriate touching" but not for the charged offenses of contact with the complainant's mouth and anus.