**Affirmed and Memorandum Opinion filed February 25, 2020.**



In The

# Fourteenth Court of Appeals

---

**NOS. 14-18-01105-CR &
14-19-00001-CR**

---

**LUIS FERNANDO NOVA, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 351st District Court
Harris County, Texas
Trial Court Cause Nos. 1506522 & 1506523**

---

## MEMORANDUM OPINION

Appellant Luis Fernando Nova appeals his two felony convictions for continuous sexual abuse of a child, asserting that he received ineffective assistance of counsel. We affirm.

# I. FACTUAL AND PROCEDURAL BACKGROUND

Appellant is the father of Ilyssa and Greta, the child-complainants in this case.[1]  Appellant and the complainants' mother Judy had ceased living together shortly after Greta's birth, but got back together in 2009, when Judy became pregnant with a son, Landon.  At that time, the family shared a single bedroom, and appellant often was alone with Ilyssa and Greta in that bedroom (the "First Apartment Years").  A few years later, the family moved to another apartment complex, with the same sleeping arrangement (the "Second Apartment Years").  A year or two after that, in December 2013, appellant and Judy again separated.  During this time, Judy served as the main caregiver of the children and they lived with her but regularly spent every other weekend with appellant (the "Separation Years").

When Ilyssa was ten years old, one of her young friends described her experience of sexual abuse. Ilyssa told the friend that she, too, had been sexually abused.  The friend's mother contacted the children's teacher, who, in turn, told Judy. An investigation followed.

Ilyssa described the forensic interviewer as the first person to whom she reported much detail about her sexual abuse, though she told her mother, her grandmother, and her teacher some details before the interview.  Greta said that after learning Ilyssa had told a friend about sexual abuse, she planned to disclose the events of her own experience to her mother. She ultimately did, but before she spoke to her mother, she first told her grandmother.  Like Ilyssa, Greta, who was nine years old at the time, also gave a detailed account of events to Erika Gomez, the forensic interviewer, and both girls underwent medical exams conducted by Dr.

---

[1] To protect the privacy of the complainants and their brother, we use pseudonyms to refer to the complainants and other family members.

Reena Issac.

Appellant was charged by indictment with two felony counts of continuous sexual abuse of child, based on allegations that, as to each of his daughters, he committed at least two offenses of aggravated sexual assault.

Before trial, the State notified appellant of its intention to use Ilyssa's and Greta's hearsay statements through the testimony of outcry witnesses: the State named the girls' mother (Judy), the forensic interviewer (Erika Gomez), and Illysa's teacher for Ilyssa's case, and Judy and Erika Gomez for Greta's case. The trial court consolidated the two cases for trial.

At trial, Judy and Erika Gomez were the first two witnesses in the State's case-in-chief. Each of them testified about Ilyssa's and Greta's out-of-court statements reporting the abuse. Appellant's trial counsel did not raise any hearsay objection to the witnesses' testimony about what Ilyssa and Greta had told them. Nor did appellant's trial counsel take any other action to prompt a hearing concerning the admissibility of any outcry-witness testimony. These witnesses' testimony as to Ilyssa's and Greta's statements to them about appellant's conduct mirrored to a great extent what Ilyssa and Greta said during their trial testimony. The girls' mother and the forensic interviewer each testified about the same offenses, though the forensic interviewer recited more details of the sexual abuse reported to her.

The jury found defendant guilty of the two charged offenses and assessed punishment at 47 years' confinement as to each offense. The trial court entered judgment of convictions, sentencing appellant to two consecutive 47-year terms of confinement.

## II. ISSUES AND ANALYSIS

Appellant's sole issue on appeal is that his counsel rendered ineffective assistance, specifically "due to the failure of defense counsel to object to the State's introduction of multiple outcry witnesses and improper hearsay testimony."

Under the Texas Rules of Evidence, hearsay is not admissible unless it falls within an exception to the rule. Tex. R. Evid. 802; *Rosales v. State*, 548 S.W.3d 796, 806 (Tex. App.—Houston [14th Dist.] 2018). Article 38.072 of the Code of Criminal Procedure provides a statutory exception to the rule against hearsay for prosecutions of certain sexual crimes. *See* Tex. Code Crim. Proc. Ann. art. 38.072 §2(b) (West Supp. 2017); *Rosales*, 548 S.W.3d at 806. The burden of proof is on the State, as the proponent of the evidence, to establish the elements of article 38.072 for the testimony to be admissible. *Rosales*, 548 S.W.3d at 806.

The statute requires the trial court to hold a hearing outside the presence of the jury to determine whether the statement is reliable based on the time, content, and circumstances. Tex. Code Crim. Proc. Ann. art. 38.072, §2(b)(2); *Rosales*, 548 S.W.3d at 806. To be admissible, the proponent of the evidence must establish that the statements (1) were made by the child against whom the offense allegedly was committed; and (2) were made to the first person, 18 years of age or older, other than the defendant, to whom the child made a statement about the offense. Tex. Code Crim. Proc. Ann. art. 38.072, §2(a)(1)(A), (2), (3).

The Court of Criminal Appeals has interpreted this statute to mean "that the outcry witness must be the first person, 18 years old or older, to whom the child makes a statement that in some discernible manner describes the alleged offense." *Garcia v. State*, 792 S.W.2d 88, 91 (Tex. Crim. App. 1990). The statement of the child must be more than words giving a "general allusion that something in the area of child abuse was going on." *Id.* In addition, outcry-witness designations are

4

event-specific, not person-specific. *Rosales*, 548 S.W.3d at 806–07. More than one outcry witness may testify if each witness testifies about different events. *See Lopez v. State*, 343 S.W.3d 137, 140 (Tex. Crim. App. 2011); *Rosales*, 548 S.W.3d at 807. The Court of Criminal Appeals has noted that the determination of the "first person" who was given a "statement about the offense" may sometimes be a difficult one that demands close scrutiny by the trial judge. *Garcia*, 792 S.W.2d at 91.

In any child-abuse case involving outcry-witness testimony, a child may first report the abuse to one adult, but not provide more than a general allusion that something in the area of child abuse was going on, and later provide sufficient details about the event to another person. The second person's testimony of the out-of-court statement then would be admissible as proper outcry testimony. *See Garcia*, 792 S.W.2d at 91. In a case involving multiple instances of abuse, a child may provide the requisite detail about one event to one person but no detail about another event to that person, while providing to a second person a detailed account of another sexual-abuse event. In that scenario, both the first person and the second person would qualify as outcry witnesses as to different instances of abuse. *See Matthews v. State*, 152 S.W.3d 723, 729 (Tex. App.—Tyler 2004, no pet.)(concluding the trial court did not err in admitting the testimony of two outcry witnesses upon determining that their testimony related to different incidents). So, hearsay testimony from more than one outcry witness may be admissible under article 38.072 when the witnesses testify about different events. *Lopez*, 343 S.W.3d at 140. In this case, both child-complainants reported multiple incidents of sexual abuse.

Appellant implicitly concedes that the trial court would have permitted one outcry witness, and characterizes the testimony of the first witness (Judy) as "not

5

event-specific enough" to justify the conclusion that there could be multiple proper outcry witnesses. Appellant argues "it cannot be determined that the statements which [Ilyssa] and [Greta] made to different adults concerned separate and discrete offenses." Appellant essentially contends that Judy's testimony covered all events so that none were left for a second outcry witness. Appellant asserts that his trial counsel should have objected to the second witness's outcry testimony as hearsay that was not admissible under the outcry statute because the statements related to the "same information" or the same sexual-abuse events already addressed in Judy's testimony. *See Lopez*, 343 S.W.3d at 140 (explaining that hearsay testimony from more than one outcry witness may be admissible under article 38.072 only if the witnesses testify about different events).

Both the United States Constitution and the Texas Constitution guarantee an accused the right to assistance of counsel. U.S. Const. amend. VI; Tex. Const. art. I, § 10; *see also* Tex. Code Crim. Proc. Ann. art. 1.051. This right necessarily includes the right to reasonably effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Ex parte Gonzales*, 945 S.W.2d 830, 835 (Tex. Crim. App. 1997). To prevail on his ineffective-assistance-of-counsel claims, appellant must prove (1) counsel's representation fell below the objective standard of reasonableness, and (2) a reasonable probability that but for counsel's alleged deficiency the result of the proceeding would have been different. *See Strickland*, 466 U.S. at 687–88; *see also Hernandez v. State*, 726 S.W.2d 53, 55 (Tex. Crim. App. 1986) (applying *Strickland* standard to ineffective-assistance claims under the Texas Constitution). In considering an ineffective-assistance claim, we indulge a strong presumption that counsel's actions fell within the wide range of reasonable professional behavior and were motivated by sound trial strategy. *Strickland*, 466 U.S. at 689; *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999);

*Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). To defeat this presumption, any allegation of ineffectiveness must be firmly grounded in the record so that the record affirmatively shows the alleged ineffectiveness. *Prine v. State*, 537 S.W.3d 113, 117 (Tex. Crim. App. 2017).

Trial counsel generally should be given an opportunity to explain counsel's actions before the court finds counsel ineffective. *Id.* In most cases, a direct appeal proves an inadequate vehicle for raising an ineffective-assistance claim because the record generally stands undeveloped and cannot adequately reflect the motives behind trial counsel's actions. *Rylander v. State*, 101 S.W.3d 107, 110–11 (Tex. Crim. App. 2003); *Thompson*, 9 S.W.3d at 813–14. In the face of a silent record, we cannot know trial counsel's strategy, so we will not find deficient performance unless the challenged conduct is "so outrageous that no competent attorney would have engaged in it." *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005).

Appellant's trial counsel did not move for new trial, and appellant raises ineffective assistance of counsel for the first time on appeal. So, the trial record stands silent as to counsel's trial strategy for not objecting to Gomez's testimony.

A sound trial strategy may be executed imperfectly, but the right to effective assistance of counsel does not entitle a defendant to errorless or perfect counsel. *Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006). Instead, we "review the totality of the representation and the circumstances of each case without the benefit of hindsight." *Lopez*, 343 S.W.3d at 143. Though counsel's conscious decision not to object to evidence is not insulated from review, unless the defendant overcomes the presumption that counsel's actions were based in sound trial strategy, counsel generally will not be found ineffective. *Ex parte Flores*, 387 S.W.3d 626, 633 (Tex. Crim. App. 2012).

In *Lopez v. State*, the Court of Criminal Appeals reviewed the same issue under virtually the same fact pattern we face today — an ineffective-assistance complaint based on the failure to object to multiple witnesses testifying about the same events reported to them by a minor alleging sexual abuse. 343 S.W.3d at 143. In summarizing its analysis of the first prong of the appellant's ineffective-assistance claim, the high court stated:

> The record is silent as to why trial counsel failed to object to the outcry-witness testimony. The record could have been supplemented through a hearing on a motion for new trial, but appellant did not produce additional information about trial counsel's reasons for allowing all three outcry witnesses to give similar testimony about the same events or for allowing opinion testimony about the credibility of the complainant, both without objection. Appellant has thus failed to meet his burden under the first prong of *Strickland,* and the court of appeals erred in finding otherwise.

*Lopez*, 343 S.W.3d at 143–44; *see Prestiano v. State*, 581 S.W.3d 935, 948 (Tex. App.—Houston [1st Dist.] 2019, pet. ref'd). Appellant has not explained how this court may distinguish the facts of this silent-record case from this line of cases. Nor has our review of the record revealed any basis to do so. We conclude that the failure of appellant's trial counsel to object to Gomez's hearsay testimony is not "so outrageous that no competent attorney would have engaged in it." *See Goodspeed*, 187 S.W.3d at 392. Appellant has failed to overcome the presumption that his counsel's actions were based on sound trial strategy, and thus appellant has failed to satisfy the first prong of the test for ineffective assistance of counsel. *See Lopez*, 343 S.W.3d at 143–44.

Even were we to presume for the sake of argument, that appellant satisfied *Strickland's* first prong and showed that appellant's counsel's failure to object to Gomez's testimony as inadmissible hearsay fell below an objective standard of reasonableness, appellant's claim still would lack merit because appellant has not

satisfied *Strickland's* second prong. Appellant has not shown a reasonable probability that but for counsel's alleged deficiency in failing to object to multiple outcry-witnesses the result of the proceeding would have been different.

A reasonable probability is one sufficient to undermine confidence in the outcome. *Cox v. State*, 389 S.W.3d 817, 819 (Tex. Crim. App. 2012). In determining whether an appellant has been prejudiced by counsel's deficient performance, the court "must consider the totality of the evidence before the judge or jury." *Strickland*, 466 U.S. at 695, 104 S.Ct. 2052. "[A] verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Id.* at 696, 104 S.Ct. 2052. Both complainants testified at length and with graphic detail about specific acts of sexual abuse that they suffered at the hands of appellant. The outcry witnesses testified that Greta had reported vivid details of these acts, including sensory details. When Greta testified, she first denied any oral contact but later after a break, during cross-examination, she confirmed that it had occurred and gave details about the incidents. Greta also explained that when first questioned during direct examination, she did not remember the incidents. Appellant's counsel pointed out this inconsistency during closing argument.

In sum, both Ilyssa and Greta, ages 13 and 12 at the time of trial, provided detailed, generally consistent testimony about appellant's abuse. The jury had an opportunity to assess the credibility of Ilyssa and Greta throughout their extensive testimony and cross-examination and the testimony appeared to have a strong impact on the jury. Appellant's trial counsel commented on a shared impulse among those in the room, to want to go up and hug the girls while watching them testify, and he noted that four jurors were crying within a few minutes of Ilyssa's testimony. The children's mother (Judy) and the forensic interviewer (Gomez),

9

testified as to the same information.

In sum, the record contains the same evidence from other sources — the complainants — about the incidents of sexual abuse described in the outcry witnesses' testimony. Thus, appellant's ineffective-assistance claim fails because the outcry testimony was largely cumulative of other evidence, including the complainants' testimony and Issac's testimony. *See Ingham v. State*, 679 S.W.2d 503, 508 (Tex. Crim. App. 1984).

Before trial and at trial, appellant consistently denied sexually abusing Ilyssa and Greta. Appellant's sister testified that she believed her brother, and testified to seeing the complainants with appellant during the Separation Years with such frequency to suggest an inconsistency between the number of times the girls testified that they were sexually assaulted with the number of opportunities appellant had to do so during that period.

During closing argument, appellant's trial counsel addressed the effect of bolstering witness testimony with cautionary historical examples. He educated the jury about the history of the phrase, "Don't drink the Kool-Aid." Without objection, he explained that in the Jonestown Massacre good people were convinced that the right thing to do was to drink cyanide-laced Kool-Aid and give it to their children. By reference to the mass persuasion that took place at the Jonestown Massacre and in Nazi Germany (also without objection), appellant's counsel suggested that the jury not be similarly led to believe what a number of witnesses had said to be true. After begging these questions – *Why did the girls lie? What's their motive?* — defense counsel set up his answer. Relying exclusively on evidence and testimony of Judy, Gomez (and her interview reports), and Issac (and the medical reports), appellant's counsel alluded to a motive for Ilyssa and Greta to lie — jealousy harbored by Judy regarding "other women"

10

appellant had brought into his life.

The only testimony supporting appellant's reason-to-lie theory stemmed from the outcry-witnesses and other out-of-court statements—not anything Ilyssa or Greta said at trial. In considering the totality of evidence, we note that Ilyssa and Greta each provided their own accounts of the events of the abuse and that their accounts did not differ in any significant way from those offered by the outcry witnesses.

Neither Ilyssa nor Greta made an made an outcry at the time of the abuse, but they made outcries within two months of the last incident. Ilyssa testified that she thought she was unable to do anything about it. Greta testified that appellant told her to keep it a secret.

In light of the thorough testimony of Ilyssa and Greta, the strength of the other record evidence against appellant, and the fact that the motive-to-lie evidence came largely through the outcry witnesses appellant now contends his trial counsel should have sought to block, we could hardly conclude there is a reasonable probability that, but for an objection to multiple outcry-witnesses, the results of the proceeding would have been different. *See West v. State,* 474 S.W.3d 785, 793–94 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (holding appellant failed to show prejudice when record contained ample evidence of guilt). Appellant cannot satisfy the second prong of *Strickland.*

## III. CONCLUSION

Appellant's ineffective-assistance-of-counsel arguments provide no basis for appellate relief. Accordingly, we overrule appellant's sole issue and affirm the trial court's judgments.


/s/    Kem Thompson Frost
Chief Justice

Panel consists of Chief Justice Frost and Justices Christopher and Bourliot.

Do Not Publish — Tex. R. App. P. 47.2(b).