In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-19-00276-CR**
_____

**RONNIE WILLIAMS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court**
**Jefferson County, Texas**
**Trial Cause No. 17-27705**

**MEMORANDUM OPINION**

A jury convicted appellant Ronnie Williams of indecency with a child and assessed punishment at seven years of confinement and a $5000 fine. In his sole issue, Williams complains that the trial court abused its discretion by allowing a forensic interviewer to testify as an outcry witness. We affirm the trial court's judgement.

1

## PERTINENT BACKGROUND

Prior to trial, the State filed a notice of intent to use hearsay statements that K.S., the child victim, made at the Garth House to Kim Hanks, a forensic interviewer. The State's notice indicated that during the interview, K.S. stated that when she tried to teach Williams to dance, Williams pulled her close to him, shook her hips, and kissed her cheeks and lips. K.S. told Hanks that Williams raised her nightgown and touched her upper thigh with his hand, and Williams saw that she was wearing a bra and panties. According to the State's notice, K.S. explained that Williams was wearing shorts and a short-sleeved shirt and that he was sitting in a chair when he pulled her close to "his private," and K.S. indicated that her nightgown and underwear were up. K.S. stated that she felt Williams's private on her private and it felt weird, "like a little circle that was up and down." According to K.S., Williams's body was still when he pulled her close, but Williams was moving K.S.'s hips back and forth. K.S. stated that Williams smelled like cologne and that she smelled like him.

Defense counsel objected that the State's notice to use K.S.'s hearsay statement violated article 38.072 of the Texas Code of Criminal Procedure, because Hanks was not the first adult over eighteen to whom K.S. had made an outcry. According to defense counsel, K.S.'s teacher was the proper outcry witness, because K.S.'s disclosure to her teacher was more than a general allusion that child abuse

2

had occurred and was a statement made in a discernable manner that described the alleged offense. Defense counsel argued that the State's investigating officer, Staci Landor, averred in her probable cause affidavit that K.S. had made an outcry of sexual assault to her teacher.

Prior to opening statements, defense counsel asked the trial court to rule on his objection to the State's designation of Hanks as the outcry witness. Defense counsel argued that the proper outcry witness was K.S.'s mother or homeroom teacher because they heard the freshest explanation of the events from K.S., which did not include any statements regarding the charged offense. According to defense counsel, K.S. made statements to her family members, officers, and teachers fifteen days before she made statements to Hanks. Defense counsel argued that according to Detective Landor's statement, K.S. first told her teacher that she was raped, and then K.S. made a statement to two officers and the assistant principal alleging that Williams had kissed her on the cheek, neck, and mouth and had grabbed her inner thigh.

In response, the prosecutor noted that K.S. made a statement to her mother the day the incident occurred, and K.S.'s mother's statement indicates that K.S. stated that Williams kissed her on the cheek and neck, touched her thigh, and made her feel uncomfortable. The prosecutor stated that the next day, K.S. told her grandmother "a very similar" account of what she told her mother, and K.S. also made statements

3

at her school. According to the prosecutor, K.S. told her teachers that she had been raped, and K.S. told her assistant principal that her mother's friend kissed her neck, cheek, and lips, and rubbed her thighs, legs, arms, and stomach. The prosecutor argued that Hanks is the proper outcry witness because K.S. did not describe the alleged offense of genital-to-genital contact until Hanks's interview. After considering the arguments of counsel, the trial court stated that it had very broad discretion in determining the proper outcry witness, which could be more than one person, and that it would consider the evidence and carry defense counsel's objection along with the trial.

During trial, K.S. testified that she was nine years old in September 2016, when Williams hugged her and kissed her cheek, neck, and lips. K.S. testified that Williams was sitting in a chair and she was standing when Williams pulled her back between his legs and into his lap and placed his hands around her waist. K.S. explained that when she was in Williams's lap, he moved around in a circular motion, and K.S. felt Williams's private poking her private part. K.S. testified that when she was on Williams's lap, her nightgown was flipped up in the back and she was wearing panties.

K.S. explained that she only told her mother that Williams had made her feel uncomfortable by kissing her cheek and neck because her mother got mad. K.S. testified that she also told her brother about how Williams had kissed her on the

4

cheek and neck, but K.S. did not provide him with more details. K.S. testified that she told her grandmother that Williams had made her uncomfortable and had kissed her on the neck, cheek, and mouth, and K.S. explained that she told her homeroom teacher the same details she had told her mother. According to K.S., she told two other teachers about what had happened, but she was not comfortable telling her teachers all the details. K.S. testified that when she went to her assistant principal's office, she told her assistant principal, another teacher, and police officers about what had happened. K.S. explained that she did not disclose all the details until she spoke with Hanks at the Garth House, and K.S. testified that Hanks was the first person she talked with about feeling Williams's genitals on her genitals.

K.S.'s mother, J.G., testified that K.S. told her that Williams made her feel uncomfortable and indicated that Williams had touched the back of her thigh. J.G. explained that K.S. told her that Williams wanted K.S. to kiss him on the lips. K.S.'s teacher testified that she gave a statement to police and that K.S. had indicated that something of a sexual nature had occurred and K.S. said she had been raped, but K.S. did not provide a lot of detail.

Officer Macy Bergeron, who was working with the Beaumont Independent School District Police Department when K.S. made outcry statements at school, testified that K.S. told her that Williams did not touch her private area, but close to it on her thigh. Bergeron explained that she thought K.S. meant that Williams did

not touch her private area with his hand, and nobody asked if Williams had touched K.S.'s private area with any other part of his body. According to Bergeron, K.S. also reported that Williams kissed her on the cheek, neck, and lips. Detective Staci Landor of the Beaumont Police Department testified that she did not know that Williams had committed the offense of indecency with a child until K.S. made an outcry during her interview with Hanks at the Garth House. According to Landor, prior to the interview, K.S. had only disclosed to her mother that Williams had touched her "on the butt."

The trial court conducted a hearing outside the presence of the jury to determine whether Hanks would be permitted to testify as an outcry witness. Hanks testified that she was the forensic interview supervisor at Garth House. Hanks explained that she interviewed K.S., and during the interview, K.S. stated that Williams kissed her neck, cheek, and mouth. Hanks testified that K.S. reported that Williams raised her gown, touched her upper thigh area, and shook her hips with his hands. Hanks further testified that K.S. explained that when Williams pulled her close to him, she felt Williams's private area on her private area and that it felt weird. According to Hanks, K.S. stated that she felt Williams's private on top of her underwear but underneath her gown, and K.S. explained that Williams was wearing clothes and his body was still, but he was moving her hips. Hanks testified that to

6

her knowledge, she was the first person over the age of eighteen who K.S. talked with about the genital-to-genital contact.

At the conclusion of the outcry hearing, the trial court overruled defense counsel's objection to the State's designation of Hanks as the outcry witness and found that Hanks was an appropriate outcry witness under article 38.072, because no other witness testified about the significant details of the offense alleged in the indictment. The trial court permitted Hanks to testify as an outcry witness at trial.

ANALYSIS

In his sole issue, Williams complains that the trial court abused its discretion by allowing Hanks to testify as an outcry witness under article 38.072 of the Texas Code of Criminal Procedure. *See* Tex. Code Crim. Proc. Ann. art. 38.072. According to Williams, Hanks was not a proper outcry witness because K.S. had outcried to her brother, mother, teachers, and school administrator before Hanks interviewed K.S. about the alleged offense. We review a trial court's decision to designate a witness as an outcry witness under an abuse of discretion standard. *Garcia v. State*, 792 S.W.2d 88, 92 (Tex. Crim. App. 1990); *Rosales v. State*, 548 S.W.3d 796, 806 (Tex. App.—Houston [14th Dist.] 2018, pet. ref'd). An appellate court will uphold the trial court's designation of the outcry witness if the decision is supported by the evidence. *Garcia*, 792 S.W.2d at 92. We will not find that an abuse of discretion occurred if

the trial court's decision falls within the zone of reasonable disagreement. *Rosales*, 548 S.W.3d at 806.

Under Rule 802 of the Texas Rules of Evidence, hearsay is not admissible unless it falls within an exception to the hearsay rule. Tex. R. Evid. 802; *Hayden v. State*, 928 S.W.2d 229, 231 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd). Article 38.072 provides a statutory exception to the rule against hearsay for prosecutions of certain sexual crimes committed against a child younger than fourteen years of age. *See* Tex. Code Crim. Proc. Ann. art. 38.072 §§ 1, 2(a), (b); *Hayden*, 928 S.W.2d at 231. Article 38.072 allows the admission of the child victim's out-of-court statement as long as that statement is a description of the offense and is offered into evidence by the first adult the victim told of the offense. *Sanchez v. State*, 354 S.W.3d 476, 484 (Tex. Crim. App. 2011).

As the proponent of the evidence, the State has the burden to establish the elements of article 38.072. *Hayden*, 928 S.W.2d at 231. Specifically, the proponent must establish that the statements (1) were made by the child against whom the offense was allegedly committed; and (2) were made to the first person, eighteen years of age or older, other than the defendant, to whom the child made a statement about the offense. *See* Tex. Code Crim. Proc. Ann. art. 38.072 § (2)(a)(2), (3). The statute requires that the trial court conduct a hearing outside the presence of the jury to determine whether the victim's out-of-court statement is reliable based on the

time, content, and circumstances of the statement. *Id.* § 2(b)(2); *Sanchez*, 354 S.W.3d at 484-85. Because the child's statement must describe the alleged offense in some discernible manner and "be more than words which give a general allusion that something in the area of child abuse was going on[,]" the evidence must clearly show that the child described the offense to the outcry witness. *Garcia*, 792 S.W.2d at 91. The proper outcry witness is the first adult to whom the child tells the details of how, when, and where the sexual abuse occurred. *Reyes v. State*, 274 S.W.3d 724, 727 (Tex. App.—San Antonio 2008, pet. ref'd).

More than one outcry witness may testify at trial about different events and offenses because outcry testimony is event specific. *Lopez v. State*, 343 S.W.3d 137, 140 (Tex. Crim. App. 2011). A trial court does not abuse its discretion by admitting testimony from an outcry witness that concerns a different act or offense stemming from the same event. *See Polk v. State*, 367 S.W.3d 449, 453 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd); *see also Divine v. State*, 122 S.W.3d 414, 419-20 (Tex. App.—Texarkana 2003, pet. ref'd) (involving a child's outcry to multiple people about different acts that occurred during the same event). Here, the State charged Williams with indecency with a child, specifically alleging that Williams engaged in sexual contact with K.S. by touching K.S.'s genitals with his genitals. The record supports the trial court's determination that K.S. did not make any statements regarding the specific details about the charged offense until she spoke with Hanks

during the forensic interview, which was the first time that K.S. reported that she felt Williams's genitals touch her genitals. *See Rodgers v. State*, 442 S.W.3d 547, 552 (Tex. App.—Dallas 2014, pet. ref'd) (determining that forensic interviewer was proper outcry witness when child's allegations during interview made it clear that the alleged offense occurred).

On this record, we conclude that the trial court did not abuse its discretion by determining that Hanks was a proper outcry witness under article 38.072 and allowing Hanks to testify as an outcry witness. *See* Tex. Code Crim. Proc. Ann. art. 38.072; *Garcia*, 792 S.W.2d at 92; *Rodgers*, 442 S.W.3d at 552; *Polk*, 367 S.W.3d at 453. Accordingly, we overrule Williams's sole issue and affirm the trial court's judgment.

AFFIRMED.

_____
W. SCOTT GOLEMON
Chief Justice

Submitted on January 26, 2021
Opinion Delivered February 3, 2021
Do Not Publish

Before Golemon, C.J., Kreger and Horton, JJ.