**Affirmed and Opinion filed March 28, 2013.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-12-00177-CR
## NO. 14-12-00178-CR

---

## TOMAS JOSE GARCIA, Appellant

## V.

## THE STATE OF TEXAS, Appellee

---

**On Appeal from the 176th District Court
Harris County, Texas
Trial Court Cause Nos. 1287845 & 1287846**

---

## O P I N I O N

Appellant Tomas Jose Garcia appeals from his convictions on two counts of aggravated sexual assault of a child. A jury found him guilty on both counts, and the trial court sentenced him to two five-year prison terms to run concurrently. In his sole issue on appeal, appellant contends that the trial court violated his constitutional right to present a defense when it refused to admit evidence

allegedly establishing that the complainant's mother had sent sexually explicit text messages to one of appellant's daughters. We affirm.

*Background*

The complainant testified that appellant digitally penetrated her vagina on two or three separate occasions when she was seven or eight years old. At the time of trial, the complainant was eleven years old. Appellant is the father of the complainant's brother and, in 2008, lived in the same apartment with the complainant, her mother and brother, and one of appellant's two daughters. The complainant stated that the first time appellant touched her vagina, she was lying in the top bunk of a bunk bed when he stepped onto a toy box at the foot of the bed, pulled her feet towards him, pulled her pants and underwear down, and inserted his finger into her vagina. The complainant stated that she pretended to be asleep because she was afraid he would hurt her if he knew she was awake. She did not tell anyone about the incident immediately afterwards because she was afraid that no one would believe her and appellant might try to hurt her. She further stated that it happened once or twice more in the same way. After the complainant moved with her mother and brother to a different apartment without appellant, the complainant told her mother about what appellant had done to her.

During cross-examination, the complainant stated that when she told her mother about the assault, she began by saying "I know a way to put him [appellant] in jail." Appellant and the complainant's mother were involved in a custody dispute at the time over the complainant's brother. The complainant admitted that she was jealous of her brother because he received more attention than she did at least in part because his father, appellant, was still in his life, whereas the complainant's father had left the family and wanted nothing more to do with them. She admitted that she sometimes told lies to get out of trouble but said she did not

lie about "major things" and was not lying regarding the allegations against appellant.

Gayle Fuller, a licensed professional counselor, treated the complainant in 2010 for an anxiety disorder which involved scratching and hair pulling. According to Fuller, the complainant told Fuller that the father of the complainant's younger brother (appellant) had sexually abused her. The description recounted by Fuller generally matches the complainant's testimony. Dr. Marcy Donaruma, a specialist in evaluating child abuse victims, examined the complainant at Texas Children's Hospital in late September 2010. Donaruma likewise testified that the complainant described what appellant did to her in a fashion similar to the account the complainant gave in her testimony.

Officer George Garcia of the Houston Police Department testified that he interviewed appellant while investigating the complainant's allegations. According to Officer Garcia, appellant told him that he once saw the complainant lying on her bed with her legs apart and her underwear askew, and he used his pinky finger to pull her underwear back into place. He acknowledged that he might have accidentally touched her sexual organ at that time and that he "messed up [and] shouldn't have done that." Appellant also stated he should have told the complainant's mother but did not, he felt ashamed, and "people were going to view him as a bad person . . . a person he never wanted to be." Officer Garcia concluded from these statements that appellant had done what the complainant had accused him of doing.

The State did not call the complainant's mother as a witness during its case-in-chief; however, the defense called her to the stand when presenting its case. During the mother's testimony, the following exchange occurred regarding her relationship with appellant's two daughters:

Q. Okay. How did you get along with his kids?

A. I got along with them fine, too, up until moving out.

Q. And would you say that you treated [E.G.] like your daughter?

A. Pretty much.

Q. And what about [A.G.]?

A. Same. I never treated them any different.

Counsel asked if there was a restraining order against her relating to one of appellant's daughters, A.G., and the mother responded, "Not a restraining order, that I'm aware of." When counsel attempted to ask the mother if there were "any issues" regarding her and A.G., the court sustained the prosecutor's objection as to relevance. Counsel next asked if the mother had sent "inappropriate text messages" to A.G., and a relevance objection again was sustained. The mother then acknowledged that there was an ongoing legal dispute between her and appellant regarding their son and that a guilty verdict in this case would aid her position in the family law case.[1]

After the mother was excused as a witness, defense counsel told the judge that he wished to call a witness for the purpose of impeaching the mother's testimony regarding whether there was a restraining order preventing her from contacting A.G. Counsel explained that the mother had allegedly sent text messages of a sexual nature (jokes and other inappropriate remarks) to the under-aged girl. The State objected to the witness on relevance grounds. The defense responded that because the mother testified that "she treats those kids the same," the sending of the inappropriate texts to one girl "shows the opportunity . . . [t]o use these sexual things and to damage a child and to manipulate and mold a child." The judge sustained the relevance objection.

---

[1] According to the mother, the dispute was not over custody of the child but was regarding appellant's visitation rights.

4

Appellant also testified on his own behalf. He acknowledged that the complainant and her family had lived with him for a time and that there was a bedroom in the apartment with a bunk bed and a toy box at the end of it. He further recounted an incident similar to what he had told Officer Garcia in which he used his pinky finger to cover the complainant's private parts and then covered her with a blanket. He denied ever intentionally or knowingly touching her vagina. He further explained that he told Officer Garcia that he was ashamed because he was "not used to talking about the private parts."[2]

Appellant also mentioned in his testimony that there was a custody dispute between himself and the complainant's mother regarding the couple's son. The defense presented testimony from a psychologist regarding false allegations of sexual abuse in divorce cases and custody disputes. This expert highlighted the possibilities that a child could be influenced by a parent to make false accusations against another parent and a child making accusations could simply be trying to help one parent in the dispute.

As stated, the jury found appellant guilty on two counts of aggravated sexual assault of a child. The trial court subsequently sentenced him to two five-year prison terms to run concurrently.

*Analysis*

In a single issue, appellant contends that the trial court violated his constitutional right to present a complete defense when it refused to admit evidence allegedly establishing that the complainant's mother had sent sexually

---

[2] Both appellant and his daughter who lived in the apartment where the assaults allegedly occurred provided testimony suggesting that any inappropriate behavior towards the complainant may have been by a friend of appellant's who lived in the apartment for a time. The complainant, however, testified that the assaults occurred after the other man had moved out and that it was appellant who committed the acts.

explicit text messages to her stepdaughter. A trial court's exclusion of relevant evidence that is vital to the defense can rise to the level of denying the fundamental constitutional right to present a meaningful defense. *See Ray v. State*, 178 S.W.3d 833, 835 (Tex. Crim. App. 2005) (citing *Potier v. State*, 68 S.W.3d 657, 659-62 (Tex. Crim. App. 2002)). Before considering whether appellant's constitutional rights may have been violated, we must first determine whether, in fact, the trial court erred in excluding the evidence appellant sought to introduce. *Id*.

We review a trial court's determination of the admissibility of evidence under an abuse of discretion standard and will not reverse so long as that determination is within the "zone of reasonable disagreement." *Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011). We may not substitute our own judgment for that of the trial court in deciding whether the trial court abused its discretion but must only consider whether the court's determination was within the zone of reasonable disagreement. *Id*. at 442; *Montgomery v. State*, 810 S.W.2d 372, 391-92 (Tex. Crim. App. 1990).

The trial court sustained the State's relevance objection to the offer of evidence to demonstrate that the complainant's mother had sent sexually inappropriate texts to one of appellant's daughters. Relevant evidence has a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable than it would be without the evidence." Tex. R. Evid. 401. Relevant evidence is admissible unless otherwise barred by law. *Id*. 402. Irrelevant evidence is inadmissible. *Id*.

Appellant contends that the evidence regarding the mother's conduct toward another young girl was relevant because the mother said she treated the girls the

6

same[3] and the alleged conduct with one girl indicated a willingness to manipulate the children with regard to matters of a sexual nature. In other words, according to appellant, the alleged fact the mother sent sexually inappropriate messages to one girl tends to show that the mother manipulated the complainant into falsely accusing appellant of sexual assault. In support of his position, appellant points to the psychologist's testimony regarding the phenomenon of false allegations of sexual abuse in child custody cases. Appellant also highlights the complainant's testimony that when she first told her mother about the assaults, the complainant began by saying "I know a way to put him [appellant] in jail."

The mother's statement that she treated the girls the same was not made in the context of sexuality but was a general statement regarding how she felt about the girls. Whether the mother made sexually explicit comments to one child, who was several years older than the complainant, does not necessarily indicate that she also made sexually explicit comments to the complainant, much less that she manipulated the complainant into falsely accusing appellant of sexual assault. Appellant does not point to any evidence indicating the mother made any sexually explicit statements to her daughter or that she urged or otherwise manipulated her daughter to lie about the alleged assaults. The trial court reasonably may have concluded that the mother's allegedly sending sexually explicit text messages to appellant's daughter was not relevant to the question of the complainant's veracity in regards to the complainant's allegations against appellant. The trial court's determination was at least within the zone of reasonable disagreement; therefore, we will not substitute our own judgment and disturb the ruling on appeal. *See*

---

[3] According to appellant, the mother's testimony indicated that she treated all three girls, the complainant and appellant's two daughters, the same. This is a reasonable interpretation of her testimony and one we will assume is correct for purposes of our analysis; however, it is not necessarily the only reasonable interpretation.

*Tillman*, 354 S.W.3d at 435, 442; *see also Wachholtz v. State*, 296 S.W.3d 855, 858 (Tex. App.—Amarillo 2009, pet. stricken) (holding trial court's decision to exclude evidence was not outside zone of reasonable disagreement).

Because we conclude that the trial court did not err in excluding the evidence in question, we need not determine if the exclusion of that evidence prevented appellant from presenting a meaningful defense. *See Ray*, 178 S.W.3d at 835. Accordingly, we overrule appellant's sole issue on appeal.

We affirm the trial court's judgment.

/s/ Martha Hill Jamison
Justice

Panel consists of Justices Frost, Christopher, and Jamison.

Publish — TEX. R. APP. P. 47.2(b).