In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-18-00399-CR
_____

JOHNATHON CHRISTIAN MACDONALD, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 435th District Court
Montgomery County, Texas
Trial Cause No. 17-06-07133-CR

MEMORANDUM OPINION

A grand jury indicted Appellant Johnathon Christian MacDonald for aggravated sexual assault of his daughter, J.B., who was under the age of six. *See* Tex. Penal Code Ann. § 22.021(a)(1)(B)(i), (a)(2)(b). Specifically, the indictment alleged that MacDonald "intentionally or knowingly" caused his "sexual organ to contact and/or penetrate the anus of J.B., a child who was then and there younger than 6 years of age[.]" The jury convicted MacDonald, and the trial court sentenced

1

him to forty-five years of confinement. In three appellate issues, MacDonald challenges (1) the sufficiency of the evidence, (2) the trial court's exclusion of alternative perpetrator evidence, and (3) the trial court's admission of certain audio recordings of the complainant over the defense's objection. We affirm the trial court's judgment.

## I. Background

A patrol officer for the Conroe Police Department testified that in May 2017, he was dispatched to an apartment complex in Montgomery County to investigate a report of a possible aggravated sexual assault of a child. The officer arrived at the scene and spoke with T.T., who told him she babysat MacDonald's daughter, J.B., in her apartment along with her own three-year-old son, K.S. She told the officer that earlier that evening before MacDonald came to pick up J.B., she found her son naked in the corner of his bedroom with J.B.'s head in his lap.

After the officer interviewed T.T. and took her statement, he then contacted CPS. The officer told the jury that he took steps to ensure CPS addressed the situation as soon as possible, because he had concerns about MacDonald's continued access to J.B. if the child stayed with MacDonald in his apartment. He testified that a CPS caseworker met him at MacDonald's apartment around 4:00 the next morning. The officer described MacDonald's demeanor as agitated and defensive when they

explained why they were there. The officer stayed in the bedroom of the apartment with MacDonald while the CPS caseworker spoke with J.B. in the living room. The officer testified that after speaking with J.B., the caseworker decided to remove her from the home. MacDonald then called his mother, J.J.M., to pick up J.B. The officer returned to the station and prepared his report.

A clinical psychologist from the Harris County Children's Assessment Center testified for the State. He explained the general reasons why children often make delayed outcries rather than reporting abuse immediately. He testified that children are usually abused by people who are around them and have access to them, who most often are family members. The psychologist also explained that if a child has been abused by a family member, they may have both positive and negative emotions about that person; they may love the individual but hate the fact that they have been abused.

Detective Bret Irvine with the Conroe Police Department also testified. Once assigned the case, he reviewed the patrol officer's report. The detective told the jury he then contacted the CPS caseworker to schedule a forensic interview for J.B., which he observed from a separate room. During the interview, he wanted to corroborate the information T.T. provided and some of J.B.'s statements about her interactions with MacDonald. Detective Irvine testified that J.B. provided sensory

3

details during the forensic interview, which he viewed as significant in the investigation. The detective also scheduled an appointment for J.B. to see a sexual assault nurse examiner (SANE). The detective said that J.B.'s grandmother, J.J.M., brought her to these appointments; however, he had concerns that J.J.M. was not being protective of J.B., did not believe the abuse occurred, and might try to contaminate J.B.'s recall. Detective Irvine testified that CPS eventually removed J.B. from J.J.M.'s care.

Detective Irvine testified that he also scheduled and observed a forensic interview for K.S., T.T.'s son. The detective described T.T. as "concerned" and "helpful." Detective Irvine testified that T.T. recorded three conversations with J.B. on her phone, and he had T.T. bring her phone to the police station so they could download the files.

Detective Irvine also told the jury he interviewed MacDonald, who denied sexually abusing his daughter and advised Detective Irvine he believed his daughter was lying. The detective described MacDonald as "very emotional" during the interview. At the conclusion of the interview, MacDonald provided a written statement again denying any inappropriate contact with his daughter. Detective Irvine explained that the police did not collect any clothing or evidence from the apartment because they were not provided a timeline for when the last incident of

4

abuse may have occurred and therefore, had no idea what clothing they would need to seize. The detective testified that when he reviewed the SANE's report, the history provided by J.B. was consistent with what she said in the forensic interview, and he applied for an arrest warrant.

The SANE testified regarding her examination of J.B. She conducted a medical exam on J.B. a few weeks after the incident was reported. A redacted copy of her report was admitted as evidence at trial. The SANE testified regarding the contents of her report, which contained quoted language from J.B. regarding her father assaulting her anally with his sexual organ. The SANE noted that J.B. had excellent verbal skills for her age. The SANE testified that she did not find any evidence of injury or trauma and explained why that is not uncommon. On cross-examination, the SANE confirmed that the only information she had regarding anal penetration came from J.B.

The forensic interviewer testified as the outcry witness in this case.[1] She explained that J.B. could not provide a full event narrative, which was consistent with the child's age. The interviewer testified that J.B. could answer some open-ended questions, knew the difference between the truth and a lie, and promised to

---

[1] Prior to her testimony, the trial court conducted a hearing outside the jury's presence and determined she was qualified to testify as the outcry witness.

tell the truth. She testified that she asked J.B. what she liked about her dad, and J.B. responded "his lovins." The interviewer then asked J.B. to tell her about her dad's "lovins," and she responded that he kisses her on the tongue. The forensic interviewer told the jury how J.B. described her father sexually assaulting her, which was consistent with the description contained in the SANE's report. The interviewer also testified regarding the sensory details J.B. provided.

Following a hearing outside the jury's presence, the trial judge ruled J.B. was competent to testify. J.B. testified and described how her dad sexually assaulted her. J.B.'s description of the abuse was similar to the information contained in the SANE's report and the outcry witness's testimony.[2] During J.B.'s testimony, J.B. circled the male genitalia and an anus on anatomically correct drawings. J.B. said that MacDonald told her not to scream, and she provided sensory details when asked why she screamed. She said this was not something that was pretend; it was real.

T.T., J.B.'s babysitter, also testified. T.T. testified she babysat J.B. for about six months. T.T. contacted police because something happened with J.B. and her son that concerned her. She testified she had been folding laundry and went to check on J.B. and her son, K.S. T.T. testified that her son was naked from the waist down, and

---

[2] J.B. described her father inserting his sexual organ into her anus, using the terms "no-no," "thing"" and "pee" to describe MacDonald's sexual organ.

6

J.B. had her head in his lap. After T.T. separated the children and spoke with J.B. about what happened, T.T. had concerns about MacDonald. Later that night, T.T. used her phone and recorded her conversations with J.B. After these conversations, T.T. spoke with her husband, and they decided to call the police.

The State sought to admit these recordings, but the defense objected based on hearsay, which the trial court initially sustained. However, on cross-examination, the defense questioned T.T. about whether she was a forensic interviewer and implied that T.T. coached J.B. The State again sought to admit the recordings, arguing that the defense had opened the door during its cross-examination. At that point, the trial court admitted the recordings over defense objection, noting that the defense "opened the door." The State played T.T.'s recordings for the jury in which J.B. is heard calling her dad a "meanie head," explaining that she sucked on her daddy's sexual organ and had learned it from him. T.T. denied telling J.B. what to say.

An expert in memory recall and how memories are formed testified for the defense. He explained that a young child's memory capability is considerably limited when compared to that of older children and adults. The expert testified that it was possible for children who viewed pornography to confuse that with something that happened to them.

7

MacDonald testified at trial and denied molesting his daughter, having anal sex with her, or touching her inappropriately. He said that CPS removed J.B. from her mother in February of 2015 and placed J.B. with him. MacDonald testified that J.B. lived with him primarily from June 2015 through May 2017. He told the jury he believed his daughter lied about him.

**Other Evidentiary Issues**

During the SANE's testimony, the defense objected to the admission of her redacted report. Specifically, J.B. reported to the SANE that sometimes her grandfather with a "big beard" touched her private area with his hand and toilet paper. This portion of the report was redacted, and the defense complained it wanted the unredacted report admitted, because they wanted to present alternative perpetrator evidence and objected on the basis that the exhibit was incomplete. The trial court held a hearing outside of the jury's presence, and the State argued that the information was not relevant because this was nothing like what J.B. alleged against MacDonald, it would lead to confusion of the issues, and it was more prejudicial than probative. The trial court overruled the defense's objection and admitted the State's redacted version of the report.

## II. Sufficiency of the Evidence

We first address MacDonald's third issue, in which he contends the evidence was legally insufficient to prove beyond a reasonable doubt that he was the perpetrator of the crime. When evaluating the legal sufficiency of the evidence, we view all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the essential elements of the offense beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 902 n.19 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). The jury is the sole judge of the witnesses' credibility and weight to be given their testimony. *Tate v. State*, 500 S.W.3d 410, 413 (Tex. Crim. App. 2016). We defer to the jury's responsibility to fairly resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from basic facts to ultimate facts. *See Hooper*, 214 S.W.3d at 13. We presume that the jury resolved conflicting inferences in favor of the verdict. *See Brooks*, 323 S.W.3d at 889 n.13; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). "[We] must evaluate all of the evidence in the record, both direct and circumstantial, whether admissible or inadmissible." *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999) (citation omitted).

Texas Penal Code Section 22.021 provides that a person commits aggravated sexual assault if he intentionally or knowingly causes the penetration of the anus of a child by any means or causes the anus of the child to contact the sexual organ of another person, including the actor, and the victim is under the age of fourteen. *See* Tex. Penal Code Ann. § 22.021(a)(1)(B)(i), (a)(2)(B). A child victim's testimony alone is sufficient to support a conviction for aggravated sexual assault. *See* Tex. Code Crim. Proc. Ann. art. 38.07(a), (b)(1). Furthermore, testimony regarding a child victim's outcry statement alone can be sufficient to support a conviction for aggravated sexual assault. *Tear v. State*, 74 S.W.3d 555, 560 (Tex. App.—Dallas 2002, pet. ref'd).

Here, the jury had the benefit of both the victim's testimony and outcry witness testimony. The child victim, J.B., testified that her father put his sexual organ in her anus, and the outcry witness provided similar testimony. Viewing the evidence in the light most favorable to the verdict and deferring to the jury's decision on the weight and credibility of the testimony, we conclude that a reasonable factfinder could have found MacDonald guilty of the aggravated sexual assault of J.B. beyond a reasonable doubt. *See id.*; *see also* Tex. Code Crim. Proc. Ann. art. 38.07(a), (b)(1);

*Tate*, 500 S.W.3d at 413; *Brooks*, 323 S.W.3d at 902 n.19; *Clayton*, 235 S.W.3d at 778; *Hooper*, 214 S.W.3d at 13. We overrule MacDonald's third issue.[3]

### III. Evidentiary Rulings

In his first issue, MacDonald complains the trial court erred by denying admission of alternative perpetrator evidence. In support of this issue, he contends that he should only have to prove probable cause to believe a third-party perpetrator committed the crime to establish the requisite nexus for the admission of the alternative perpetrator evidence, and that the application of the nexus requirement and balancing under Texas Rule of Evidence 403 creates arbitrary and disproportionate results denying him the right to present a defense under the Fifth, Sixth, and Fourteenth Amendments. In his second issue, MacDonald asserts the trial court erred by admitting the State's evidence in the form of audio recordings of the complaining witness.

We review a trial court's ruling on the admissibility of evidence for an abuse of discretion.[4] *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003). A trial judge's decision on the admission of evidence will not be reversed if it lies "within

---

[3] We note that although J.B. alleged other sexual misconduct acts against her father at trial, we limit our discussion to the acts alleged in the indictment.

[4] Although we generally review evidentiary issues for an abuse of discretion, we review constitutional issues *de novo*. *See Martinez v. State*, 212 S.W.3d 411, 423 (Tex. App.—Austin 2006, pet. ref'd) (citations omitted).

11

the zone of reasonable disagreement." *Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2014).

## A. Alternative Perpetrator Evidence

In support of his first issue, MacDonald essentially makes two arguments. First, he contends he established the requisite nexus between the alternate perpetrator and the offense. Second, he claims that the nexus requirement and Rule 403 balancing are unconstitutional as applied.

### 1. Nexus Requirement

"Relevant evidence" is evidence generally admissible and is defined as evidence that has "any tendency to make a fact more or less probable than it would be without the evidence; and . . . the fact is of consequence in determining the action." Tex. R. Evid. 401. Texas Rule of Evidence 403, on the other hand, provides that "[t]he court may exclude *relevant* evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury[.]" *Id.* 403 (emphasis added). To be admissible, alleged alternative perpetrator evidence must be sufficient, alone or in combination with other evidence in the record, to show a nexus between the crime charged and the alleged alternative perpetrator. *Wiley v. State*, 74 S.W.3d 399, 406 (Tex. Crim. App. 2002). Evidentiary rulings rarely rise to the level of denying the constitutional right to present a

12

meaningful defense. *Potier v. State*, 68 S.W.3d 657, 659 (Tex. Crim. App. 2002). "The alternative perpetrator defense typically arises in 'who done it' cases where the complaining witness does not know [her] attacker." *Ex Parte Huddlestun*, 505 S.W.3d 646, 661 (Tex. App.—Texarkana 2016, pet. ref'd).

The defense sought to admit evidence that J.B. made a statement to the SANE regarding her grandfather touching her private area, specifically that "[h]e touched my tee tee. With his hand. He used toilet paper on his hand to wipe me."[5] This statement bears no resemblance to the act the State charged MacDonald with. In the excluded statements, J.B. does not accuse her grandfather of using his sexual organ to touch her anus. Instead, she mentions that he touched her private area with toilet paper to wipe her. The proffered alternative perpetrator evidence was not sufficient on its own or in combination with other evidence to establish a nexus between the

---

[5] In his brief, MacDonald references comments another babysitter and J.J.M. made which he alleges were contained in a deputy's incident report. He also mentions comments K.S., the two-year-old, allegedly made in his forensic interview. MacDonald argues these statements corroborate the alternate perpetrator evidence pointing to not only the grandfather but also to K.S. as an assailant. This report is not contained in the record, and our review of the record shows that MacDonald never attempted to offer any such statements into evidence or make an offer of proof regarding these statements. Our review of the record is confined to the evidence before the trial court at the time of the ruling. *See Whitehead v. State*, 130 S.W.3d 866, 872 (Tex. Crim. App. 2004). Moreover, MacDonald failed to file a bill of exception. *See* Tex. R. App. 33.2 (requiring a party to file a formal bill of exception about matters that would not otherwise appear in the record). Accordingly, we do not consider these statements in our analysis.

crime charged and J.B.'s grandfather. *Wiley*, 74 S.W.3d at 406; *Michaelwicz v. State*, 186 S.W.3d 601, 617 (Tex. App.—Austin 2006, pet. ref'd); *Martinez v. State*, 212 S.W.3d 411, 424 (Tex. App.—Austin 2006, pet. ref'd) (concluding exclusion of evidence was proper when alternative perpetrator evidence failed to establish a connection between the complainant's brother and the abuse alleged and any suggestion the brother was an alternative perpetrator was "meager and speculative"). The absence of the requisite nexus is especially true when J.B. positively identified her father, rather than a stranger, as the one who penetrated her anus with his sexual organ. *See Huddlestun*, 505 S.W.3d at 661; *Ramirez v. State*, No.14-05-00435-CR, 2006 WL 2345952, at *4 (Tex. App.—Houston [14th Dist.] Aug. 15, 2006, no pet.) (mem. op., not designated for publication) (noting that the absence of a nexus was especially true when the victim testified with certainty her father "did these things," even though she lived with other different male adults).

Even if true, J.B.'s statement does not link her grandfather to the offenses for which MacDonald was tried or even establish that the grandfather committed a crime. *See Wiley*, 74 S.W.3d at 406–07; *Ruiz v. State*, 272 S.W.3d 819, 830 (Tex. App.—Austin 2008, no pet.) (noting that allegations of abuse against a grandfather, even if true, "would not bear on whether appellant also abused her"); *Michaelwicz*, 186 S.W.3d at 617. MacDonald does not point to any evidence showing the

14

grandfather engaged in the conduct described in the indictment. Likewise, the trial court could have reasonably concluded that the statements made about the grandfather were not relevant to whether MacDonald committed the sexual assault against J.B. as alleged in the indictment, as they bore no resemblance to the crime charged. *See* Tex. R. Evid. 401. Because we have concluded the trial court did not err in excluding the alternative perpetrator evidence, we need not determine if the exclusion of that evidence prevented appellant from presenting a meaningful defense. *See Garcia v. State*, 397 S.W.3d 860, 864 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd) (citing *Ray v. State*, 178 S.W.3d 833, 835 (Tex. Crim. App. 2005)).

**2. Unconstitutional as Applied**

"As applied" constitutional challenges are subject to the error preservation requirement and must be objected to at trial. *Reynolds v. State*, 423 S.W.3d 377, 383 (Tex. Crim. App. 2014). Although MacDonald sought to admit alternative perpetrator evidence, he never raised a constitutional objection or pointed out to the trial court that the exclusion of the evidence prevented him from putting on a meaningful defense. MacDonald failed to preserve his "as applied" constitutional challenge. *See id.*

We overrule MacDonald's first issue.

**B. Audio Recordings**

MacDonald also complains the trial court erred by admitting audio recordings of J.B. talking to her babysitter and discussing some of the inappropriate acts that her father taught her. The State sought to admit these recordings and the defense objected on the basis of hearsay. The trial court initially sustained the objection but ultimately admitted the recordings following the defense's cross-examination of T.T. We view the evidence in the light most favorable to the trial court's ruling admitting these recordings. *See Klein v. State*, 273 S.W.3d 297, 304 (Tex. Crim. App. 2008) (citations omitted).

Typically, an out of court statement offered for the truth of the matter asserted is considered hearsay. *See* Tex. R. Evid. 801(d). However, such consistent statements are non-hearsay if they are offered to rebut an express or implied charge that the declarant recently fabricated the testimony or acted from a recent improper influence or motive. *See id.* 801(e)(1)(B). On cross-examination, the defense asked the babysitter if she was "a trained forensic interviewer[,]" implying she may have coached J.B., a theme the defense employed with other witnesses throughout the trial. The State used the recordings to rebut the defense's theory of inappropriate questioning of J.B. or that T.T. coached her. *See id.* Accordingly, viewing the evidence in the light most favorable to the trial court's ruling, we cannot say that the

trial court abused its discretion by admitting the recordings and allowing the State to play them for the jury. *See Klein*, 273 S.W.3d at 304; *see also Tillman*, 354 S.W.3d at 435. We overrule issue two.

## IV. Conclusion

Having overruled all of MacDonald's issues on appeal, we affirm the trial court's judgment.

AFFIRMED.

_____
CHARLES KREGER
Justice

Submitted on December 27, 2019
Opinion Delivered March 4, 2020
Do Not Publish

Before McKeithen, C.J., Kreger and Horton, JJ.