**Affirmed and Memorandum Opinion filed September 2, 2021.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-20-00289-CR

---

### AUSTEN LOPEZ, Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

**On Appeal from the 367th District Court
Denton County, Texas
Trial Court Cause No. F17-3042-367**

---

## MEMORANDUM OPINION

Appellant Austen Lopez appeals his convictions for indecency with a child and aggravated sexual assault of a child under the age of 14 in multiple issues. *See* Tex. Penal Code Ann. §§ 21.11(a)(1); 22.021. We affirm.[1]

---

[1] The Supreme Court of Texas ordered the Second Court of Appeals to transfer this case to this court. *See* Tex. Gov't Code Ann. § 73.001. Under the Texas Rules of Appellate Procedure, "the court of appeals to which the case is transferred must decide the case in accordance with the precedent of the transferor court under principles of stare decisis if the transferee court's decision otherwise would have been inconsistent with the precedent of the

At trial, the State's first witness was A.L., the child complainant. A.L. lived in an apartment with her mother, I.G., two younger brothers, and appellant. A.L. was seven at the time the events at issue in this appeal occurred. A.L. testified that appellant touched her and made her feel uncomfortable. According to A.L., the first time appellant made her feel uncomfortable occurred when she was in her bedroom taking off her clothes before showering. Appellant entered the bedroom, put A.L. on her bed while she was naked, and took off his clothes. A.L. said appellant then "put his pee pee in mine" while she was on her back. A.L. used two dolls, representing a male and female, to explain how she and appellant were positioned when this episode occurred. A.L. also circled on a diagram of a girl and a boy what she meant when she used the term "my pee pee" and "his pee pee."

A.L. testified that both she and appellant were naked when appellant put "his pee pee" in hers. A.L. also testified that she felt something moving as appellant was on top of her. According to A.L., this movement caused her pain. A.L. told appellant to stop and appellant promised A.L. that he would not do it again. Appellant told A.L. not to tell her mother about the abuse. Despite appellant's promise, he continued to sexually assault A.L. A.L. testified that appellant got on top of her while she was naked "maybe five times." According to A.L., appellant also asked her to touch his penis with her hand. A.L. testified that she touched appellant's penis with her hand multiple times.

The State next called I.G., A.L.'s mother, and the trial court conducted a

---

transferor court." Tex. R. App. P. 41.3. We are unaware of any conflict between the Second Court of Appeals precedent and that of this court on any relevant issue.

[2] Because appellant has not challenged the sufficiency of the evidence supporting his convictions, we include only those facts necessary to provide background for his issues raised in this appeal.

hearing outside the presence of the jury to determine whether I.G. could properly testify as an outcry witness. I.G. testified that A.L. first revealed the abuse to her when she told her that appellant "had gotten on top of her, without pants, started moving, and it would hurt her." A.L. told I.G. that this happened four or more times and that appellant also asked her to touch his penis with her hands. A.L. also told I.G. that appellant warned A.L. not to tell I.G. about the abuse "because he would be gone for a long time." A.L. also disclosed that she told appellant to stop because he was hurting her.

Appellant's trial counsel did not have any questions regarding A.L.'s outcry on cross-examination, but he did object to I.G.'s testimony as an outcry witness under the Sixth Amendment and Texas Rule of Evidence 403. The trial court overruled appellant's objections and found I.G. could testify as an outcry witness.

Appellant's trial counsel sought to question I.G. about her immigration status. Appellant's attorney asked I.G. if she remembered telling a police officer that appellant had threatened to have her deported. Appellant's trial counsel also asked I.G. whether she was a United States citizen when A.L. outcried to her and what her citizenship status was at the time of trial. I.G. responded that she was not a citizen and reiterated that she was "not from here." I.G. further explained that she was not working to change her citizenship status. After argument, the trial court determined that appellant's line of questioning regarding I.G.'s citizenship status was not relevant and did not allow counsel to ask about it in front of the jury.

In front of the jury, I.G. repeated A.L.'s outcry and said that she went to the police to report what happened. I.G. testified that she spoke with Child Protective Services (CPS) and took A.L. to a forensic interview and a Sexual Assault Nurse Examiner (SANE) exam shortly after she reported the abuse to the police.

The State's next witness was Jennifer Edwards, the CPS investigator who

3

handled A.L.'s case. Edwards interviewed appellant and questioned him about the alleged abuse. Appellant told Edwards that "his pee pee could have touched her when he carried her naked from her room while he was also naked and they were going to the shower." Appellant also said that A.L. "complained that she was uncomfortable in her vaginal area," so he "examined her in the bathtub by spreading her legs and then poking it . . . [t]o see if it was poofy."

Ashley Enslow, A.L.'s forensic interviewer, testified next. The trial court conducted a second hearing outside the presence of the jury to determine whether Enslow qualified as a second outcry witness. In addition to other episodes of sexual assault, Enslow testified that A.L. told her about one episode of sexual assault during which she was laying on her stomach. According to A.L., appellant "had her lay on her stomach on her bed. He took off his clothes, laid on his stomach on top of her, rubbed his thing on her bottom, which she later clarified to be her vagina."

Appellant objected to this portion of Enslow's testimony because, in appellant's view, I.G. had already discussed the "events which took place with Austen laying on [A.L.]." The trial court overruled appellant's objection, stating that Enslow was "qualified to testify as to the additional offenses that have been articulated during [Enslow's] interview." The trial court then instructed the State that, "[a]ny testimony regarding the previous outcry statement is not going to be admitted." After the jury returned to the courtroom, Enslow discussed multiple allegations of sexual abuse that A.L. disclosed during her forensic interview. This included the episode where A.L. was laying on her stomach.

SANE nurse Julie Carriker was the State's next witness. Carriker conducted the SANE examination on A.L. Carriker recorded what A.L. told her during the examination and she testified that A.L. had injuries consistent with an adult male

4

being on top of her and rubbing his penis on or in her vagina.

The State next called police officer Gregory Latson. Latson took I.G.'s statement when I.G. came to the police station to report appellant's alleged abuse of A.L. Outside the presence of the jury, Latson testified that I.G. told him appellant made threats to get her deported and to have her children taken away from her. Latson also testified that he believed that I.G. was not an American citizen. Latson further testified that I.G. never told him that she was using the abuse allegations to take appellant's children away from him, or to have appellant thrown in jail. Arguing the evidence was relevant, appellant once again asked the trial court to admit the evidence related to I.G.'s citizenship status. The trial court ruled against admission of the evidence for a second time.

After the State rested its case, appellant called multiple witnesses outside the presence of the jury and proffered testimony related to I.G.'s citizenship status. Appellant argued that the proffered witnesses' testimony established that I.G.'s citizenship status was relevant and should be admitted. The trial court once again ruled against appellant.

Appellant did call his father and mother to testify in front of the jury. Appellant's father testified that he assisted with parental counseling involving appellant being naked around A.L.

In closing argument, appellant argued there was a lack of a clear timeline of when the abuse occurred. Appellant also asserted that I.G. had a motive to make false allegations against appellant because she was frustrated in her relationship with appellant, who seemingly did not want to work, and wanted him out. In appellant's view, I.G. saw an opportunity to get rid of appellant by using appellant's "running around the house naked." Appellant argued that I.G. coached A.L. on what to say to get appellant out.

5

The jury found appellant guilty of both charges. The jury assessed appellant's punishment at five years in prison for indecency with a child and twelve years in prison for aggravated sexual assault. This appeal followed.

## ANALYSIS

Appellant challenges his convictions in four issues. Appellant's first three issues challenge evidentiary rulings by the trial court. Appellant argues the trial court abused its discretion when it (1) excluded evidence related to I.G.'s citizenship status; and (2) allowed Enslow to testify as a second outcry witness. In his fourth issue, appellant argues that he received ineffective assistance of counsel because his trial counsel failed to ask the trial court to strike I.G.'s testimony as the first outcry witness. We address these issues in order.

## I. The trial court did not abuse its discretion when it excluded evidence related to I.G.'s citizenship status.

Appellant argues in his first issue that the trial court abused its discretion when it excluded evidence related to I.G.s' citizenship status because, in appellant's view, the evidence was relevant to I.G.'s bias or motive to fabricate sexual abuse allegations against appellant.[3]

---

[3] Appellant did not argue in the trial court, nor has he attempted to argue on appeal, that the trial court's exclusion of his proffered evidence regarding I.G.'s citizenship status violated his constitutional right to confront the witnesses against him by depriving him of the opportunity to show that a witness is biased against him. *See Golliday v. State*, 560 S.W.3d 664, 670 (Tex. Crim. App. 2018) ("Nothing in the record indicates that Appellant properly put the trial judge on notice that he was making a Confrontation Clause argument in support of admitting the excluded evidence. Parties are not permitted to bootstrap a constitutional issue from the most innocuous trial objection, and trial courts must be presented with and have the chance to rule on the specific constitutional basis for admission because it can have such heavy implications on appeal.") (internal quotations omitted); *Irby v. State*, 327 S.W.3d 138, 145 (Tex. Crim. App. 2010) ("The constitutional right of confrontation includes the right to cross-examine the witnesses and the opportunity to show that a witness is biased or that his testimony is exaggerated or unbelievable."). Appellant did argue, however, that the trial court's abuse of discretion in excluding the proffered evidence regarding I.G.'s citizenship status precluded him from

### A.    Standard of review and applicable law

We review a trial court's decision to exclude evidence for an abuse of discretion. *See Henley v. State*, 493 S.W.3d 77, 82–83 (Tex. Crim. App. 2016). Under this standard, we may not reverse a judgment unless we believe that the trial court's ruling was so clearly wrong as to lie outside the zone within which reasonable people might disagree. *Id.* If the trial court's evidentiary ruling is correct on any theory of law applicable to that ruling, we will uphold the trial court's decision. *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009). This is true even if the trial court failed to give a reason or used the wrong reason for the ruling. *Bowley v. State*, 310 S.W.3d 431, 434 (Tex. Crim. App. 2010).

Generally, a defendant may cross-examine a witness for her purported bias, interest, or motive, without undue limitation. *See* Tex. R. Evid. 613(b) (providing for impeachment of witness by evidence of alleged bias or interest in favor or against a party); *Hammer v. State*, 296 S.W.3d 555, 563 (Tex. Crim. App. 2009). For impeachment evidence to be admissible, the defendant must establish a causal connection or logical relationship between the evidence and the witness's alleged bias or motive. *Johnson v. State*, 433 S.W.3d 546, 552 (Tex. Crim. App. 2014). Limiting a defendant's right to cross-examine a witness is within a trial court's discretion. *Hammer*, 296 S.W.3d at 561.

### B.    The trial court did not abuse its discretion when it excluded appellant's proffered evidence because appellant failed to establish the evidence was relevant.

---

presenting a complete defense, thereby requiring this court to apply the constitutional harm standard set forth in Rule 44.2(a) of the Texas Rules of Appellate Procedure. Because we conclude that the trial court did not abuse its discretion when it excluded the evidence, we need not reach appellant's harm argument.

As recounted above, appellant had the opportunity to question I.G. outside the presence of the jury. During that questioning, I.G. admitted she was not a citizen of the United States, but she did not recall mentioning appellant's alleged deportation threats to Officer Latson. I.G. further testified that she was not seeking to change her current citizenship status. In addition, Officer Latson testified outside the presence of the jury that I.G. never threatened appellant, nor did she state that she intended to use A.L.'s allegations to take the children away from appellant, or to have him incarcerated. Instead, according to Officer Latson, I.G. merely reported A.L.'s outcry allegations against appellant. Based on this proffered testimony, we hold that the trial court did not abuse its discretion when it impliedly concluded that the proffered evidence was not relevant because appellant had not established a causal connection or logical relationship between the proffered evidence and I.G.'s alleged bias or motive. *See Garcia v. State*, 397 S.W.3d 860, 864 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd) (affirming trial court's exclusion of evidence because defendant failed to establish excluded evidence was relevant because he did not establish a link between alleged bad behavior by complainant's mother and an alleged bias against appellant by complainant's mother).[4] Because the trial court did not abuse its discretion when it excluded the proffered evidence regarding I.G.'s citizenship status, we overrule appellant's first issue.

---

[4] While appellant does not cite *Sansom v. State* from this court, we conclude that it does not dictate a different outcome here because it is distinguishable. 292 S.W.3d 112 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd). In *Sansom*, this court determined that the trial court had harmlessly erred when it prohibited the defendant from questioning his estranged wife about her citizenship status to show that her daughters, the complainants, had a motive to make false allegations against defendant. 292 S.W.3d at 120–21. We based this analysis on the existence of evidence in the record that one of the complainants had threatened defendant that she would call the police to report he had sexually assaulted her if defendant pursued a divorce from her mother. *Id.* The case before us lacks evidence of such a direct link between I.G.'s citizenship status and a bias or motive to coach A.L. to make false allegations against appellant.

**II. The trial court did not abuse its discretion when it admitted I.G.'s outcry witness testimony.**

In his second issue appellant asserts that the trial court abused its discretion when it permitted I.G. to testify as an outcry witness because her testimony was not sufficiently detailed. The State responds that A.L.'s outcry to I.G. was sufficiently specific such that its admission as an outcry statement was within the trial court's discretion. We agree with the State.

**A. Standard of review and applicable law**

We review the trial court's designation of an outcry witness for an abuse of discretion. *See Garcia v. State*, 792 S.W.2d 88, 92 (Tex. Crim. App. 1990); *Rosales v. State*, 548 S.W.3d 796, 806 (Tex. App.—Houston [14th Dist.] 2018, pet. ref'd). The designation will be upheld when supported by the evidence. *Rosales*, 548 S.W.3d at 806. A trial court abuses its discretion only if its ruling is outside the zone of reasonable disagreement, and we will not disturb the trial court's ruling unless a clear abuse of discretion is shown. *Id.*

Under the Texas Rules of Evidence, hearsay is not admissible unless it falls within an exception to the rule. Tex. R. Evid. 802; *Rosales*, 548 S.W.3d at 806. Article 38.072 of the Code of Criminal Procedure provides a statutory exception to the rule against hearsay for prosecutions of certain sexual crimes. *See* Tex. Code Crim. Proc. Ann. art. 38.072, § 2(b); *Rosales*, 548 S.W.3d at 806. The burden of proof is on the State, as the proponent of the evidence, to establish the elements of Article 38.072 in order for the testimony to be admissible. *Rosales*, 548 S.W.3d at 806.

The statute requires the trial court to hold a hearing outside the presence of the jury to determine whether the statement is reliable based on the time, content, and circumstances of the statement. Tex. Code Crim. Proc. Ann. art. 38.072,

§ 2(b)(2); *Rosales*, 548 S.W.3d at 806. To be admissible, the proponent of the evidence must establish that the statements (1) were made by the child against whom the offense was allegedly committed; and (2) were made to the first person, 18 years of age or older, other than the defendant, to whom the child made a statement about the offense. Tex. Code Crim. Proc. Ann. art. 38.072, § 2(a)(1)(A), (2), (3); *Rosales*, 548 S.W.3d at 806.

The Court of Criminal Appeals has interpreted this statute to mean that an outcry witness must be the first person, 18 years old or older, to whom the child makes a statement that in some discernible manner describes the alleged offense. *Rosales*, 548 S.W.3d at 806 (citing *Garcia*, 792 S.W.2d at 91). The statement of the child must be more than words giving a general allusion that something in the area of child abuse was going on. *Id.* In addition, outcry witness designations are event-specific, not person-specific. *Rosales*, 548 S.W.3d at 806–07. More than one outcry witness may testify if each witness testifies regarding different events. *See Rosales*, 548 S.W.3d at 807 (citing *Lopez v. State*, 343 S.W.3d 137, 140 (Tex. Crim. App. 2011)).

> **B.   A.L. described appellant's sexual abuse to I.G. with sufficient specificity to qualify as an outcry statement and the trial court did not abuse its discretion when it allowed I.G. to testify about A.L.'s outcry to her.**

Appellant contends that A.L.'s outcry to I.G. was limited to a general allusion because, in appellant's view, all A.L. told I.G. was that appellant got on top of her, he started moving, and it hurt her. Having reviewed the record, we disagree that A.L.'s outcry provided only a general allusion to sexual abuse. Instead, A.L.'s outcry provided specific details of the abuse. For example, I.G. testified that A.L. told her that appellant "had gotten on top of her, without pants, started moving, and it hurt her." In addition, A.L. told I.G. that the abuse occurred

10

in her bedroom, that appellant had taken her clothes off, and that the abuse happened four or more times. A.L. also told her mother that appellant "asked her to touch his parts" with her hands while he was rubbing on top of her without pants. A.L. also told I.G. that appellant covered her face and he told "her to not say anything because he would be gone for a long time." We conclude that A.L's statement to I.G. regarding appellant's sexual abuse was more than a general allusion that something in the area of child abuse was going on. *See Nino v. State*, 223 S.W.3d 749, 753 (Tex. App.—Houston [14th Dist.] 2007, no pet.) ("Though the child's statements were not lengthy or detailed, they contained sufficient information about the nature of the act and the perpetrator to fall under article 38.072 of the Texas Code of Criminal Procedure."); *cf. Rosales*, 549 S.W.3d at 807 (concluding trial court did not abuse its discretion when it determined person was not proper outcry witness because the complainant's statement that defendant "touched her the wrong way" was only a general allusion that abuse had occurred). We therefore hold that the trial court did not abuse its discretion when it admitted I.G.'s testimony as an outcry witness. We overrule appellant's second issue.

## III. The trial court did not abuse its discretion when it admitted Enslow's testimony as a second outcry witness.

Appellant argues in his third issue that the trial court abused its discretion when it admitted testimony from a second outcry witness regarding a single incident of sexual abuse. The State responds that the trial court did not abuse its discretion because it could have reasonably concluded that A.L.'s statements to Enslow described separate and discrete episodes of abuse from the allegations first disclosed to I.G. We once again agree with the State.

We review this issue under the standard set forth above in section II(A). Here, Enslow testified outside the presence of the jury that A.L. revealed to her

that appellant had taken his clothes off in A.L's bedroom, had A.L. lay on her bed on her stomach, and appellant had then laid on his stomach on top of her and rubbed his penis on her vagina. The trial court ruled that Enslow could testify as an outcry witness because A.L. had reported additional episodes of abuse to her. Because outcry testimony is event-specific, not person-specific, and there can be more than one outcry witness as long as they describe different events, we conclude the trial court did not abuse its discretion when it overruled appellant's objection and allowed Enslow to testify as a second outcry witness. *See Polk v. State*, 367 S.W.3d 449, 453 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd) ("It is therefore possible to have more than one outcry witness, as in this case, because the outcry is about different events and different offenses."). We overrule appellant's third issue.

## IV.   Appellant did not establish that he received ineffective assistance of counsel.

Appellant contends in his final issue that he received ineffective assistance of counsel because his trial counsel failed to move to strike the testimony of the first outcry witness after the trial court admitted the testimony of the second outcry witness.

An accused is entitled to reasonably effective assistance of counsel *King v. State*, 649 S.W.2d 42, 44 (Tex. Crim. App. 1983); *Bradley v. State*, 359 S.W.3d 912, 916 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd). However, reasonably effective assistance of counsel does not mean error-free representation. *Ex parte Felton*, 815 S.W.2d 733, 735 (Tex. Crim. App. 1991). Isolated instances in the record reflecting errors of omission or commission do not render counsel's performance ineffective, nor can ineffective assistance of counsel be established by isolating one portion of trial counsel's performance for examination. *Wert v. State*,

383 S.W.3d 747, 753 (Tex. App.—Houston [14th Dist.] 2012, no pet.). Therefore, when evaluating a claim of ineffective assistance, the appellate court looks to the totality of the representation and the particular circumstances of the case without the benefit of hindsight. *Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011); *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

To establish ineffective assistance of counsel, a defendant must prove that (1) trial counsel's representation fell below the standard of prevailing professional norms, and (2) there is a reasonable probability that, but for the deficient performance, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Hernandez v. State*, 726 S.W.2d 53, 55 (Tex. Crim. App. 1986) (applying *Strickland* standard to claims of ineffective assistance under the Texas Constitution). Failure to make the required showing of either deficient performance or sufficient prejudice defeats the claim of ineffective assistance. *Strickland*, 466 U.S. at 697. If a criminal defendant can prove trial counsel's performance was deficient, he still must prove he was prejudiced by his trial counsel's actions. *Thompson*, 9 S.W.3d at 812. This requires the defendant to demonstrate a reasonable probability that the result of the proceeding would have been different if trial counsel had acted professionally. *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Malett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001). "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Cox v. State*, 389 S.W.3d 817, 819 (Tex. Crim. App. 2012).

Appellant argues that his trial counsel were ineffective because they failed to move to strike I.G.'s outcry witness testimony once the trial court admitted

Enslows' testimony as a second outcry witness. We have already determined that the trial court did not abuse its discretion when it admitted outcry testimony from two witnesses because they testified regarding separate and distinct episodes of abuse. As a result, appellant's trial counsel's failure to move to strike I.G.'s testimony does not constitute ineffective assistance of counsel. *See Bradley v. State*, 359 S.W.3d 912, 919 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd) ("Counsel is not ineffective for failing to raise an objection that lacks merit."); *Oliva v. State*, 942 S.W.2d 727, 732 (Tex. App.—Houston [14th Dist.] 1997, pet. dism'd) ("Trial counsel's failure to object to admissible evidence does not constitute ineffective assistance of counsel."). We overrule appellant's fourth issue.

## CONCLUSION

Having overruled appellant's issues on appeal, we affirm the trial court's final judgment.

/s/ Jerry Zimmerer
   Justice

Panel consists of Justices Bourliot, Zimmerer, and Spain.

Do Not Publish — TEX. R. APP. P. 47.2(b).

14