

# NUMBER 13-23-00081-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**DAVID RODRIGUEZ,**                                       **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                     **Appellee.**

---

## ON APPEAL FROM THE 36TH DISTRICT COURT
## OF SAN PATRICIO COUNTY, TEXAS

---

# OPINION

**Before Justices Benavides, Tijerina, and Silva**
**Opinion by Justice Benavides**

A jury convicted appellant David Rodriguez of continuous sexual abuse of a young child, a first-degree felony, and assessed his punishment at thirty years' imprisonment. *See* TEX. PENAL CODE ANN. §§ 12.32(a), 21.02(b). Rodriguez raises two issues on appeal. First, he claims the trial court erred by allowing forensic interviewer Penny Green to testify

as an outcry witness because (a) the proper outcry witness had already testified, and (b) Green did not actually conduct the complainant's forensic interview. Second, he argues the trial court erred in admitting extraneous offense evidence because (a) Article 38.37 of the Texas Code of Criminal Procedure is unconstitutional, and (b) the evidence was otherwise inadmissible under Texas Rule of Evidence 404(b). We affirm.

## I. BACKGROUND

In November of 2021, Rodriguez was indicted for continuous sexual abuse of a child under the age of fourteen for allegedly committing two or more acts of sexual abuse against his step-granddaughter Violet[1] during a period that began on or about April 10, 2019, and ended on or about April 10, 2021. *See id.* § 21.02(b). The specific acts of sexual abuse alleged in the indictment were different forms of indecency with a child by sexual contact. *See id.* § 21.02(c)(2), (4).

The evidence at trial established that Violet was born on April 11, 2007, making her between the ages of eleven and thirteen during the alleged period of sexual abuse. Violet, who was fifteen years old at the time of trial, testified that she began living with her paternal grandmother and Rodriguez when she was "a baby" and that the first sexual contact occurred when she was "probably 11." She said that Rodriguez came into her bedroom while she was taking a nap and began touching her chest, at first over her clothes and then under them. Rodriguez reportedly stopped when he heard Violet's grandmother come home. Violet said that this type of touching occurred another "[t]en or

---

[1] We have adopted the pseudonym assigned to the complainant in the indictment. *See* TEX. CONST. art. 1, § 30(a)(1) (providing that a crime victim has "the right to be treated . . . with respect for the victim's dignity and privacy throughout the criminal justice process").

2

so" times over a period of "about two years."

Violet said that the abuse included other types of touching. On occasions, Rodriguez would touch her "private area." Sometimes this was over her clothes, and other times it was under her clothes, including under her underwear. The first time Rodriguez touched her private area, Violet was sitting on the couch watching the cartoon "Teen Titans Go!" Rodriguez sat down next to her, turned off the television, and "started off on [her] butt and then slowly moved onto [her] private." Violet recalled that she was "a little bit older" than eleven at the time. She said this type of touching also occurred "[a]bout ten or more" times.

Finally, Violet testified that Rodriguez also "made [her] touch his privates." The first time this occurred, Violet was sleeping between her grandparents in their bedroom when Rodriguez "grabbed [her] hand and made [her] touch his private." She said that he placed her hand "under his pants" and that "[i]t felt hairy and wrinkly." She recalled that her grandmother was asleep at the time because "[s]he was snoring." She said that this type of touching occurred "[a]bout five" times. Violet said that she never told her grandmother about the abuse because Rodriguez threatened to hurt her if she told anyone. With the encouragement of a close friend, Violet eventually decided to tell Rhonda Edmonds.

Edmonds testified that she is employed as a "case manager" with Communities at Schools, which has a contract with the local school district to provide onsite support services to students at Violet's middle school. She said that Violet and a friend came to her office on "April 19th." She described Violet's demeanor as "timid," which signaled to Edmonds that Violet was going to tell her "something big." She also said that Violet "was

3

crying and definitely scared." Violet told Edmonds that "her grandpa had touched her." Edmonds asked her whether the contact was related to medical care, and Violet told her "no." Edmonds confirmed that this was the extent of their conversation, and Violet did not provide her with "any other details." Edmonds said she then reported the matter to Child Protective Services (CPS) because she "knew that this was going to turn into a police matter, and [she] did not want to interfere in that in any way, shape or form." She added, "I am not trained for that in any way."

As part of the ensuing investigation, Violet was taken to the local Children's Advocacy Center (CAC) for a forensic interview, which was conducted by Esmeralda Garza. As part of its normal practice, the CAC made a video recording of the interview. Before trial commenced, the State announced that Garza was no longer with the CAC and was unavailable to testify. The State asked the trial court to allow Green, another forensic interviewer with the CAC, to testify in Garza's place "as the outcry witness" because Green "reviewed the CAC video" and previously testified as an expert in other child sexual abuse cases. Rodriguez said he would reserve his objection "until actual testimony." Likewise, the trial court deferred its ruling on Green testifying as an outcry witness. When the State called Green to testify, Rodriguez took her on voir dire, and Green confirmed that she did not conduct Violet's interview, had never met Violet, and that her only familiarity with the case was reviewing the recording of the interview conducted by Garza. The trial court found "the witness to be reliable" and allowed her to testify as an outcry witness.

Green then testified to the allegations Violet allegedly made during her interview

4

with Garza. Violet reportedly told Garza that Rodriguez began abusing her when she was twelve years old. On "several" occasions when Violet's grandmother was not at home, Rodriguez touched Violet's bare breasts and private area. Rodriguez also forced Violet to "touch his private parts." Violet reportedly said that Rodriguez's penis "felt like spaghetti if you didn't know what you were touching." Green said she did not have any concerns that Violet was coached because Violet provided sensory details about what happened.

Elana Estrada, a sexual assault nurse examiner at Driscoll Children's Hospital, testified that she examined Violet on April 27, 2021. The medical records from that examination were admitted into evidence without objection. They include Violet's description of the abuse during the examination, which Estrada read into the record without objection:

> It started when I was 10 or 11 and kept going from there. He, my grandpa[,] threatened me that he would hurt me if I didn't keep it a secret. It happened every day, I don't really want to talk about it again. The last time was 2 days before I told the school counselor, 2 weeks ago. My grandma had just left. I was in the living room watching TV. He came in and turned off the TV and started putting his hand down my pants under my clothes and up my shirt under my bra. I stopped him by kicking him and I was like, NO! I ran out into the back yard.

> One time, I think I was 12 or so, he forced me on the bed and tried to put his penis in me. He had his pants partly down and pulled my pants down partly, but I kicked him in the face. It never went inside anywhere, and he never did that again.

In a section of the medical records used to indicate the "[t]ime of the incident," Estrada quoted Violet as saying that the abuse occurred "two years ago until two weeks ago." In another section used to document the type of abuse, Estrada checked boxes indicating that the abuse included digital penetration of Violet's sexual organ.

5

Prior to trial, the State notified Rodriguez of its intention to call Violet's father and aunt to testify regarding their own allegations of prior sexual abuse by Rodriguez. In a pretrial hearing, the State asked the trial court to find their testimony admissible under Article 38.37 of the Texas Code of Criminal Procedure. Rodriguez agreed that such testimony is generally admissible under Article 38.37:

> Your Honor, I don't object to the State's offer of those two witnesses; however, I would reserve any kind of objection to what they actually testify to during the trial. But, you know, I understand the law, and I know that they are allowed to testify under these circumstances, especially with notice in advance.

The trial court said that it had reviewed the State's notice, including the "brief synopsis of what each of these witnesses would be testifying to," and found that such "evidence more probably than not would allow a jury to convict based on that evidence."

Violet's father testified without objection that Rodriguez sexually abused him when he was eleven years old. He said that he spent the night in the same bed as Rodriguez and his mother, and after his mother left for work the next morning, Rodriguez began "spooning" and "touching" his "privates" over and under his clothes. He also recalled feeling Rodriguez's erection. Eventually, Violet's father was able to leave the room and lock himself in his sister's bedroom. This was the only incident that occurred between himself and Rodriguez.

Violet's aunt also testified without objection that Rodriguez sexually abused her when she was a child. She said the first incident occurred when she "was about seven or eight years old." She was watching television in the master bedroom when Rodriguez entered the bedroom and "stuck his finger in [her] butt." She said that the abuse continued

6

for "a few years" and escalated over time: "He penetrated me. He did everything to me throughout time." She said that on more than ten occasions, Rodriguez penetrated her vagina with his penis and that the first such instance occurred when she "was probably like eight or nine."

Rodriguez testified in his own defense and denied all the allegations of sexual abuse made against him. The jury returned a guilty verdict and accessed Rodriguez's punishment as described above. This appeal followed.

## II. OUTCRY TESTIMONY

By his first issue, Rodriguez argues that the trial court erred by allowing Green to testify as an outcry witness because: (1) Edmonds was the first adult Violet made an outcry to, and (2) Green was not the person who conducted Violet's forensic interview.

### A. Standard of Review & Applicable Law

Hearsay is an out of court statement offered at trial for the truth of the matter asserted in the statement. TEX. R. EVID. 801(d). Hearsay is generally inadmissible unless an exception applies. *Id.* R. 802. Article 38.072 of the Texas Code of Criminal Procedure provides a statutory exception that permits the State to introduce certain hearsay statements that a child victim of sexual abuse makes to an outcry witness. TEX. CODE CRIM. PROC. ANN. art. 38.072, § 2. An outcry witness is the first person over the age of eighteen, other than the defendant, to whom the child spoke about the offense. *Id.* art. 38.072, § 2(a)(3). Among other requirements, the trial court must hold a hearing outside the presence of the jury to determine if the hearsay statement is "reliable based on the time, content, and circumstances of the statement." *Id.* art. 38.072, § 2(b)(2). To qualify

for the exception, "[t]he statement must be 'more than words which give a general allusion that something in the area of child abuse is going on'; it must be made in some discernable manner and is event-specific rather than person-specific." *Lopez v. State*, 343 S.W.3d 137, 140 (Tex. Crim. App. 2011) (quoting *Garcia v. State*, 792 S.W.2d 88, 91 (Tex. Crim. App. 1990)).

Hearsay testimony from more than one outcry witness may be admissible under Article 38.072 so long as each of the witnesses testifies to a different instance of sexual abuse. *Id.* ("Hearsay testimony from more than one outcry witness may be admissible under article 38.072 only if the witnesses testify about different events."); *Rosales v. State*, 548 S.W.3d 796, 808 (Tex. App.—Houston [14th Dist.] 2018, pet. ref'd) ("The outcry witness designation is event-specific, not person-specific."); *see also Quinones v. State*, No. 13-10-00140-CR, 2011 WL 3841586, at *9 (Tex. App.—Corpus Christi–Edinburg Aug. 25, 2011, no pet.) (mem. op., not designated for publication) ("[S]o long as separate outcry witnesses testify about separate offenses, the testimony of each is admissible."). The testimony of a second outcry witness is not admissible, however, when the witness merely provides additional details regarding the same instance of sexual abuse. *Brown v. State*, 189 S.W.3d 382, 387 (Tex. App.—Texarkana 2006, pet. ref'd) ("[B]efore more than one outcry witness may testify, it must be determined the outcry concerned different events and was not simply a repetition of the same event told to different individuals.").

"A trial court has broad discretion in determining the admissibility of outcry statements pursuant to this statute, and the trial court's exercise of that discretion will not

be disturbed on appeal unless a clear abuse of discretion is established by the record." *Marquez v. State*, 165 S.W.3d 741, 746 (Tex. App.—San Antonio 2005, pet. ref'd). A trial court abuses its discretion if it acts arbitrarily or unreasonably, without reference to any guiding rules or principles. *Rhomer v. State*, 569 S.W.3d 664, 669 (Tex. Crim. App. 2019).

The erroneous admission of a hearsay statement constitutes nonconstitutional error that must be disregarded unless the error affects the appellant's substantial rights. *Barshaw v. State*, 342 S.W.3d 91, 93 (Tex. Crim. App. 2011); *see* TEX. R. APP. P. 44.2(b). An appellate court should not overturn a criminal conviction for nonconstitutional error "if the appellate court, *after examining the record as a whole*, has fair assurance that the error did not influence the jury, or influenced the jury only slightly." *Barshaw*, 342 S.W.3d at 93 (quoting *Schutz v. State*, 63 S.W.3d 442, 444 (Tex. Crim. App. 2001)). "In cases involving the improper admission of outcry testimony, the error is harmless when the victim testifies in court to the same or similar statements that were improperly admitted or other evidence setting forth the same facts is admitted without objection." *Gibson v. State*, 595 S.W.3d 321, 327 (Tex. App.—Austin 2020, no pet.) (collecting cases).

## B.     Edmonds Was Not an Outcry Witness

By his first sub-issue, Rodriguez argues that Green could not be the outcry witness because the first adult Violet made an outcry to was Edmonds. *See* TEX. CODE CRIM. PROC. ANN. art. 38.072, § 2(a)(3). We agree with the State that Edmonds was not an outcry witness, and therefore, her testimony would not preclude a proper outcry witness from testifying.

Visibly upset, Violet told Edmonds that "her grandpa had touched her." Violet

denied that the touching was related to medical care but did not provide Edmonds with "any other details" about the alleged abuse. In fact, Edmonds testified that she intentionally chose not to ask any further questions because she thought it was better left to the proper authorities. As such, Violet's statement to Edmonds was no more than "a general allusion that something in the area of child abuse [wa]s going on." *See Lopez*, 343 S.W.3d at 140 (quoting *Garcia*, 792 S.W.2d at 91); *see also Banda v. State*, No. 13-19-00587-CR, 2021 WL 2006325, at *7 (Tex. App.—Corpus Christi–Edinburg May 20, 2021, pet. ref'd) (mem. op., not designated for publication) (describing a "proper outcry witness" as "the first adult to whom the child tells the details of how, when, and where the sexual abuse occurred"). Therefore, contrary to Rodriguez's assertion, Violet's statement to Edmonds was not a legitimate basis for excluding Green as an outcry witness. *See Reyes v. State*, 274 S.W.3d 724, 728 (Tex. App.—San Antonio 2008, pet. ref'd) (concluding that a social worker was not the proper outcry witness because the complainant's statement was merely a general acknowledgment that she had been abused); *Castelan v. State*, 54 S.W.3d 469, 475–76 (Tex. App.—Corpus Christi–Edinburg 2001, no pet.) (concluding that the complainant's grandmother was not the proper outcry witness because the complainant did not relay specific details of the abuse but only stated appellant "put his thing in through the back"). We overrule Rodriguez's first sub-issue concerning the admission of Green's purported outcry testimony.

## C.     Green Was Not a Proper Outcry Witness

Alternatively, Rodriguez argues that Green was not a proper outcry witness because Violet made the outcry to Garza—not Green. We agree.

10

"Article 38.072 of the Texas Code of Criminal Procedure, the outcry statute, is a hearsay exception statutorily limited to live testimony of the outcry witness." *Bays v. State*, 396 S.W.3d 580, 581 (Tex. Crim. App. 2013). The outcry witness is "the first adult a child confides in regarding the abuse." *Martinez v. State*, 178 S.W.3d 806, 811 (Tex. Crim. App. 2005); *see* TEX. CODE CRIM. PROC. ANN. art. 38.072, § 2(a)(3). Article 38.072 is a "carefully limited" exception to the general hearsay rule with "stringent procedural requirements." *See Martinez*, 178 S.W.3d at 811; *Bays*, 396 S.W.3d at 591.

Under the plain language of the statute, Green could not be the outcry witness because she was not "the first person, 18 years of age or older, other than [Rodriguez], to whom [Violet] made a statement about the offense." *See* TEX. CODE CRIM. PROC. ANN. art. 38.072, § 2(a)(3). Instead, based on the State's own representations, that person was Garza. The State was therefore limited to introducing Violet's outcry statement "through" Garza's live testimony. *See id.* art. 38.072, § 2(b)(1)(B); *Bays*, 396 S.W.3d at 581.

Moreover, there is no statutory exception that would allow the State to introduce Violet's outcry by an alternative means based on Garza's unavailability. *See* TEX. CODE CRIM. PROC. ANN. art. 38.072. Indeed, the Texas Court of Criminal Appeals has rejected attempts to introduce an outcry statement by methods other than the live testimony of the outcry witness. *See Bays*, 396 S.W.3d at 582 ("The child-complainant's own videotaped statement does not meet the requirements for being admitted under that statute."); *Sanchez v. State*, 354 S.W.3d 476, 489 (Tex. Crim. App. 2011) ("Because an Article 38.072 hearing provides a defendant with an inadequate opportunity to cross-examine an outcry witness's credibility, admitting testimony from an Article 38.072 hearing at a trial

11

when the witness is unavailable violates the Sixth Amendment."). If Violet's own recorded statement was inadmissible under Article 38.072, then it stands to reason that Green could not use that video as the sole basis for providing outcry testimony. *See Bays*, 396 S.W.3d at 582. Simply put, a person who merely watches a video recording of an outcry statement is not an outcry witness within the meaning of the statute. *See* TEX. CODE CRIM. PROC. ANN. art. 38.072, § 2(a)(3).

Lastly, the trial court's determination during the preliminary hearing that Green was a "reliable" witness was immaterial and misplaced. The purpose of the preliminary hearing is to "decide the reliability of an *outcry* based only on the time, content, and circumstances of the statement, leaving the determination of the outcry witness's credibility to the fact finder at trial." *Sanchez*, 354 S.W.3d at 489 (emphasis added). For the forgoing reasons, we conclude that the trial court abused its discretion when it permitted Green to testify as an outcry witness.

**D.    The Error Was Harmless**

Nevertheless, we also conclude that any error in admitting Green's outcry testimony was harmless because Violet and Estrada provided the same or similar testimony without objection. *See Gibson*, 595 S.W.3d at 327. To be clear, Violet provided the most detailed account of the abuse, and her testimony alone was enough to render the error harmless. *See West v. State*, 121 S.W.3d 95, 105 (Tex. App.—Fort Worth 2003, pet. ref'd) (holding that error in admitting outcry testimony did not influence jury's verdict or had but a slight effect because complainant provided detailed testimony relating to the offense). In other words, Green did not testify about any key fact that was not also

12

provided through Violet's more comprehensive testimony. As far as a specific comparison, all three witnesses testified that Rodriguez touched Violet's "private area" on multiple occasions. Violet and Green both testified that Rodriguez also forced Violet to touch his penis several times. Finally, Violet and Estrada testified that the abuse occurred regularly over a period of two years, while Green testified that the abuse occurred "several" times without specifying the period. On this record, we have fair assurance that any error in admitting Green's outcry testimony did not have a substantial and injurious effect on the jury's verdict. *See Barshaw*, 342 S.W.3d at 93. Rodriguez's first issue is overruled.

### III.    EXTRANEOUS OFFENSE EVIDENCE

By his final issue, Rodriguez argues that the trial court erred in admitting the testimony of Violet's father and aunt for two reasons. First, Rodriguez contends that "Article 38.37 is unconstitutional, both facially and as applied, because it deprived Rodriguez of the presumption of innocence in violation of the Due Process Clause of the United States Constitution." Alternatively, Rodriguez argues that the evidence was inadmissible under Texas Rule of Evidence 404(b) "because the prejudicial effect of the two extraneous offenses substantially outweighed any probative value and led to confusion."

### A.    Applicable Law

Notwithstanding Rule 404(b), which generally limits the use of extraneous offense evidence, Article 38.37 permits the admission of evidence of prior sexual offenses for "any bearing the evidence has on relevant matters, including the character of the

13

defendant and acts performed in conformity with the character of the defendant."

*Compare* TEX. R. EVID. 404(b), *with* TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2(b). Thus, extraneous offense evidence admitted under Article 38.37 "is, by definition, propensity character evidence" that the Legislature has deemed "admissible notwithstanding those characteristics." *Harris v. State*, 475 S.W.3d 395, 402 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd). Before admitting such evidence, the trial court "must" conduct a preliminary hearing outside the presence of the jury to "determine that the evidence likely to be admitted at trial will be adequate to support a finding by the jury that the defendant committed the separate offense beyond a reasonable doubt." TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2-a.

Yet, a trial court may exclude evidence that is admissible under Article 38.37 if its probative value is "substantially outweighed" by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence. TEX. R. EVID. 403; *see* TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2(b) (excepting evidence admitted under Article 38.37 from the application of Rules 404 and 405 but not Rule 403). However, to trigger a balancing test under Rule 403, the defendant must make a timely objection or request. *Belcher v. State*, 474 S.W.3d 840, 847 (Tex. App.—Tyler 2015, no pet.) ("When evidence of a defendant's extraneous acts is relevant under Article 38.37, Section 2(b), the trial court is still required to conduct a Rule 403 balancing test upon proper objection or request."); *see also Killinger v. State*, No. 13-17-00016-CR, 2020 WL 728305, at *4 (Tex. App.—Corpus Christi–Edinburg Feb. 13, 2020, pet. ref'd) (mem. op., not designated for publication) (discussing the procedures for admitting evidence

14

under Article 38.37 and noting that, "[u]pon proper objection, the trial court must also conduct a balancing test under Rule 403"). If not, the issue is forfeited and may not be raised for the first time on appeal. *Lumsden v. State*, 564 S.W.3d 858, 898–99 (Tex. App.—Fort Worth 2018, pet. ref'd) (declining to address an issue concerning Rule 403 because appellant failed to preserve it in the trial court); *see also Flores v. State*, No. 13-12-00362-CR, 2013 WL 3326982, at *5 (Tex. App.—Corpus Christi–Edinburg June 27, 2013, no pet.) (mem. op., not designated for publication) ("Because appellant did not make a proper rule 403 objection to this testimony at trial, he has waived this argument on appeal."); *Hernandez v. State*, No. 13-97-675-CR, 1998 WL 34202539, at *3 (Tex. App.—Corpus Christi–Edinburg Nov. 12, 1998, no pet.) (not designated for publication) ("We hold that appellant failed to object based on rule 403, and has therefore waived this argument.").

## B.  Rodriguez Failed to Preserve the Issue

As a preliminary matter, the State argues that Rodriguez has not preserved either of his complaints about the admissibility of the extraneous offense evidence. Generally, a constitutional challenge to a statute, whether facial or as applied, cannot be raised for the first time on appeal. *See Karenev v. State*, 281 S.W.3d 428, 434 (Tex. Crim. App. 2009) (holding that "a defendant may not raise for the first time on appeal a facial challenge to the constitutionality of a statute"); *Curry v. State*, 910 S.W.2d 490, 496 (Tex. Crim. App. 1995) (holding appellant waived his as-applied challenge to a statute's vagueness because he did not specifically object to it as such at trial). The only limited exception is when the statute in question "has already been held void." *Smith v. State*,

463 S.W.3d 890, 896 (Tex. Crim. App. 2015). Rodriguez does not direct us to any authority holding Article 38.37 unconstitutional, and we find none. To the contrary, each court that has considered various constitutional challenges to Article 38.37, including our own, has found it constitutional. *See, e.g.*, *Buxton v. State*, 526 S.W.3d 666, 687 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd) (holding that Article 38.37 does not violate a defendant's due process rights); *Bezerra v. State*, 485 S.W.3d 133, 139–40 (Tex. App.— Amarillo 2016, pet. ref'd) (same); *Robisheaux v. State*, 483 S.W.3d 205, 213 (Tex. App.— Austin 2016, pet. ref'd) (same); *Harris*, 475 S.W.3d at 401 (same); *Martin v. State*, 176 S.W.3d 887, 902 (Tex. App.—Fort Worth 2005, no pet.) (same); *Brantley v. State*, 48 S.W.3d 318, 329–30 (Tex. App.—Waco 2001, pet. ref'd) (same); *Jenkins v. State*, 993 S.W.2d 133, 136 (Tex. App.—Tyler 1999, pet. ref'd) (same); *see also Arriaga v. State*, No. 13-18-00583-CR, 2019 WL 3331637, at *3 (Tex. App.—Corpus Christi–Edinburg July 25, 2019, pet. ref'd) (mem. op., not designated for publication) (holding that Article 38.37 does not violate the separation of powers clause of the Texas Constitution); *Chaisson v. State*, No. 13-16-00548-CR, 2018 WL 1870592, at *5 (Tex. App.—Corpus Christi– Edinburg Apr. 19, 2018, pet. ref'd) (mem. op., not designated for publication) (determining that Article 38.37 did not violate appellant's constitutional right to due process). Thus, Rodriguez may only raise his constitutional challenges on appeal if he preserved those complaints in the trial court. *See Karenev*, 281 S.W.3d at 434; *Curry*, 910 S.W.2d at 496.

We have reviewed the record, and Rodriguez did not raise a constitutional objection to Article 38.37 when the State offered the testimony of either witness. Likewise, he did not object or request a balancing inquiry under Rule 403, and the trial court was

under no obligation to conduct one sua sponte. *See Belcher*, 474 S.W.3d at 847; *see also Killinger*, 2020 WL 728305, at *4. In fact, during the preliminary hearing, Rodriguez conceded that Violet's father and aunt "are allowed to testify under these circumstances, especially with notice in advance." Consequently, he has waived any challenge to the admissibility of their testimony. *See Karenev*, 281 S.W.3d at 434; *Curry*, 910 S.W.2d at 496; *Lumsden*, 564 S.W.3d at 898–99; *see also Flores*, 2013 WL 3326982, at *5; *Hernandez*, 1998 WL 34202539, at *3. Rodriguez's second issue is overruled.

## IV.    CONCLUSION

We affirm the trial court's judgment.

GINA M. BENAVIDES
Justice

Publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
4th day of April, 2024.

17